HUMANA OF KENTUCKY, INC., d/b/a
Humana Hospital Audubon, Movant,

v.

Pamela V. SEITZ, Respondent.

No. 88–SC–918–DG.

Supreme Court of Kentucky.

Sept. 27, 1990.

David R. Monohan, Jann B. Logsdon, Woodward, Hobson & Fulton, Louisville, for movant.

Kenneth L. Sales, Tobe Liebert, Segal, Isenberg, Sales, Stewart & Cutler, Louisville, for respondent.

STEPHENS, Chief Justice.

The issue we decide on this appeal is whether the evidence presented by the respondent-plaintiff in this case satisfied the threshold requirements of the tort of outrageous conduct, so as to justify submitting the case to a jury. The Court of Appeals answered the question in the affirmative. We disagree with the Court of Appeals and reverse its decision.

On March 11, 1985, respondent, while a patient at movant's hospital, gave birth to a stillborn fetus. On August 8, 1985, respondent filed a suit in the Jefferson Circuit Court, claiming negligence, breach of contract, and intentional infliction of emotional distress. Following pretrial discovery, the trial judge granted a summary judgment to Humana, declaring that the acts of the hospital staff were not "so extreme in degree as to go beyond all possible bounds of decency, [as] to be regarded as atrocious, and utterly intolerable in a civilized community." The trial court also found that the acts of the Humana staff did not take place over an extended period of time. The trial court relied primarily on *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984).

The Court of Appeals reversed the summary judgment and remanded the case with directions that the trial court should go forward with discovery and trial. The appellate court believed *Craft* does not require that the alleged outrageous conduct extend over a long period of time. It relied on two cases, *Rockhill v. Pollard*, 259 Or. 54, 485 P.2d 28 (1971), and *Hall v. May Department Stores Co.*, 292 Or. 131, 637 P.2d 126 (1981), for the proposition that the relationship between the parties must be

examined as an element of the tort. The court in *Rockhill* made a determination of the special duties owed by a physician to a patient. Similarly, the Court of Appeals in this case stated that the "special duties owed by a nurse to a patient are important" in deciding what behavior may be found to be extreme or outrageous.

Respondent was admitted to Humana Hospital on February 28, 1985, as a result of pregnancy complications involving a ruptured membrane. On March 10, 1985, she began experiencing pain, which she believed to be the beginning of labor. A nurse examined Ms. Seitz and informed her that she was not in labor. The pains, however, continued through the night until the early morning of March 11, 1985. Respondent contacted nurses through the bed communicator unit in her room. She was sedated and was given pain relief medicine. At about 6 a.m., she attempted to contact the nurses, but the light on her bed unit failed to come on. She "believed" the unit had been disconnected by the nursing staff. She was served breakfast and had her vital signs checked shortly after 7 a.m. After the nurse left, she felt a sharp abdominal pain. She thought she had to "go to the bathroom." Her roommate advised her not to get out of bed, but rather to use a bedpan. The roommate shut the door to the room, and at the same time, respondent began delivering the baby into the bedpan. The roommate attempted to notify the nurses on respondent's intercom, and when it did not work, she used her bedside unit. Receiving no answer, the roommate then went to the hall and yelled for help. In several minutes a cleaning woman responded.

Several minutes after that, nurses arrived and rendered assistance. During this time, one of the nurses shouted to respondent, ordering her to "shut up" because she was disturbing other patients. A few minutes later, the respondent's obstetrician came into the room, on a regular visit, and examined the fetus and respondent. He pronounced the baby dead.

A nurse wrapped the deceased baby in a sheet, and the respondent inquired where the nurse was going to take the baby. According to the respondent, the nurse said, "Honey, we dispose of them right here at the hospital."

Respondent's physician testified that, based on the history of the incident and his personal observation, the nurse "failed to demonstrate the amount of compassion that a nurse should demonstrate toward a patient. I think that it was mishandled, and that amount of trauma, emotional trauma, could have been avoided."

Based on this evidence, respondent claims that the hospital, through the conduct of its nursing staff, is liable for outrageous conduct in the handling of the above-described episode.

This Court adopted the tort of outrageous conduct in the case of *Craft v. Rice, supra.* In that case, Albert and Irene Craft, husband and wife, lived in the weighmaster's house of Ashland Coal Company, where Albert worked weighing coal and coal trucks. He was indicted for second-degree forgery for allegedly falsifying weigh tickets, but was acquitted. For nearly three months, presumably prior to trial, Rice, a former sheriff, kept Irene Craft under surveillance at work and at home, telling her on the "CB" radio that he was going to put Albert in jail. He allegedly drove close to her, forcing her to change traffic lanes. He allegedly talked on the CB radio to Albert Craft. This alleged harassment led to mental anguish on the part of Albert, and chronic diarrhea, colitis and nervousness on the part of Irene. No physical touching occurred. The gravamen of the Crafts' complaint against Rice was interference with their rights, causing emotional distress.

In adopting this new tort, we recognized the elements of proof necessary to sustain the cause of action:

1) the wrongdoer's conduct must be intentional or reckless;

2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

4) the emotional distress must be severe.

*Craft*, 671 S.W.2d at 249. *See also Ross v. Burns*, 612 F.2d 271, 273 (6th Cir.1980).

Based on the facts as stated, we declared as a matter of law that the conduct of Rice "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community. It qualifies as harassment intended to cause extreme emotional distress." *Craft*, 671 S.W.2d at 250.

In *Craft* we adopted *Restatement (Second) of Torts*, § 46 (1965), as part of the common law of this Commonwealth. That section provides:

"§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

■ The question we must decide, therefore, is whether, as a matter of law, taking the evidence of the respondent-plaintiff as being true, that evidence falls within the purview of § 46 and the four criteria we set out in *Craft*. Is it sufficient to satisfy the threshold requirements for the tort of outrageous conduct? We believe the answer is "no."

The salient "facts" relied on by respondent are as follows:

1) her *belief* that her intercom was disconnected;

2) the lapse of 12–15 minutes between the beginning of delivery and when nurses actually arrived in respondent's room;

3) a nurse telling respondent to "shut up"; and

4) a nurse telling respondent that the baby would be disposed of in the hospital.

In Comment d of § 46 of the *Restatement, supra*, it is stated:

"d. Extreme and outrageous conduct. It has not been enough that the defendant has acted with an intent which is tortious ..., or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' .... *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*"

*Restatement (Second) of Torts*, § 46 Comment d (emphasis added).

Certainly, as respondent's physician testified, the nurse's conduct showed a lack of compassion. We agree that a little more patience and TLC would have been desirable. However, after examining the facts as alleged by the respondent, we believe they describe conduct that falls short of the standards set out above.

First, there is no proof that the intercom by respondent's bed was turned off. Admittedly, it was only her "belief" that such occurred. "Belief" is not evidence and does not create an issue of material fact. A plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The delay in time before a nurse arrived may well be negligence, but it is hardly intentional, outrageous, or reckless conduct. All other evidence indicated that the nursing staff carefully and regularly cared for respondent from the time she began suffering pain. The time lapse, *per se*, would only tend to show negligence, not the tortious conduct alleged here.

The evidence of the nurse telling respondent to "shut up" likewise is not of such a nature to show that the offending nurse intentionally or recklessly caused emotional distress. Respondent was obviously distressed at giving premature birth, and the curt admonition, under the circumstances, was necessary to calm respondent, and to limit noise to prevent disturbance and discomfort to other patients in the hospital. Finally, telling respondent that the baby

would be disposed of in the hospital is cold, callous, and lacking sensitivity, but it certainly is not part of a pattern of conduct that "is beyond all decency."

The evidence relied on shows, at worst, a lack of compassion and lack of taste, but certainly does not comport with the criteria in *Craft* and in the *Restatement* § 46.

Respondent, citing Comment f to the *Restatement, supra,* argues that the hospital employees had knowledge of her vulnerable emotional state, and that this fact should be given weight in determining if she has a cause of action for this tort.

Comment f provides:

"f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, *where it would not be so if he did not know.* It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough."

*Restatement (Second) of Torts,* § 46 Comment f (emphasis added).

The standard created under Comment f does not apply to the facts of this case, since it is undisputed that the nurse in question did not know at the time she entered respondent's room that the patient had miscarried. It is true that hospital employees were aware that the respondent was under stress, but this would be true of most hospitalized patients. We are not willing to expand the tort in the manner urged on us by respondent.

Respondent also suggests we examine the "special relationship" that exists between a patient and nurse in deciding this case. We do not believe the conduct of the nurse(s) in this particular fact situation compels and authorizes a finding that the so-called special relationship of patient-nurse was violated. Because of that, it is not necessary for us to decide if such "special relationships" are part and parcel of the tort of outrageous conduct. We leave that to another day.

In conclusion, although we hold that the trial court properly granted the motion for summary judgment, we do not understand *Craft* to hold that outrageous conduct *must* extend over a long period of time in order to constitute the tort. In this case, we find that the conduct in question was not intentional, outrageous, or reckless under the standards set out in *Craft* and the *Restatement, supra.*

The decision of the Court of Appeals is reversed, and the case is remanded to the trial court for entry of a judgment consistent with this opinion.

GANT, LAMBERT and VANCE, JJ., concur.

LEIBSON, J., dissents in a separate dissenting opinion in which COMBS and WINTERSHEIMER, JJ., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The trial court erred in granting summary judgment under the facts of this case. In *Craft v. Rice,* Ky., 671 S.W.2d 247 (1984), we adopted Section 46 of the *Restatement (Second) of Torts.* Comment h to that section provides:

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *Where reasonable men may differ, it is for the jury,* subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." [Emphasis added]

In *Craft* the harassment of Mr. and Mrs. Craft continued over a period of three months. *Craft* does not, however, require the acts to take place over an extended period of time in order to make a case for intentional infliction of emotional distress. The acts of harassment must be intentional

and substantial, but there is no time framework necessarily controlling. The state of the law in this area is still developing, and we must look to the facts in each case. Harassment cannot be proved by a single spontaneous act but here there was evidence from which a jury might infer multiple acts constituting a continuous, intentional course of action.

Ms. Seitz had been in the hospital for ten days with complications with her "high risk" pregnancy. There was evidence the staff had come to view her as a problem patient. The Majority states that there was no proof that her intercom had been turned off and the delay of the nursing staff for 12–15 minutes may have been negligent "but it is hardly intentional, outrageous or reckless conduct." Eleven nurses testified in pre-trial depositions that the call light was in fact working. If that was the case, then the failure of any of the nurses to respond to her call for help for 12–15 minutes may well suggest intentional harassment of the patient. Ms. Seitz had already given birth to a stillborn child in a bedpan. A 12–15 minute wait for nursing assistance may well be a veritable "lifetime" under these circumstances.

An Arizona case, *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 716 P.2d 1013 (1986), is analogous. A patient with a "high risk" pregnancy was transported to a specific facility to be assisted by a doctor with special medical skills. There was a dispute as to whether the doctor had assured the patient's private physician that he would be waiting for her when she was transported. The doctor failed to come to the hospital despite the fact that he had been advised of the patient's complications after she arrived. Since the doctor was not present, a first-year intern and a third-year resident without experience with this type of complication had to deliver the baby. Not only was the child stillborn but was decapitated during the birth process as a result of the resident's procedure. Later, when Dr. Stimmell arrived at the hospital he failed to reveal to the patient what had happened during the delivery. She found out later from her own doctor. The Arizona Supreme Court, sitting *en banc*, reversed the grant of summary judgment on the plaintiff's claim for intentional infliction of emotional distress and held:

> "[T]he evidence concerning Dr. Stimmell's conduct before, during and after the birth of the Lucchesis' child created a factual issue so that a jury should have had an opportunity to decide whether defendant's conduct was outrageous ... the existence of several factual inconsistencies in the record was sufficient to have precluded the entry of summary judgment [citation omitted]." *Id.* 149 Ariz. at 80, 716 P.2d at 1017.

Here, a jury should have been given the opportunity to decide whether the conduct of the nursing staff before, during and after the birth of Ms. Seitz' child was outrageous. A jury should also have been allowed to consider the special relationship of patient-nurse and whether the nursing staff had knowledge of the patient's susceptibility to emotional distress per comment e and comment f of the *Restatement.*

I would affirm the decision of the Court of Appeals.

COMBS and WINTERSHEIMER, JJ., join this dissent.