972 F.2d 346
 20 Media L. Rep. 1496
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billy J. BOWLING, Plaintiff-Appellant,
v.
Texann Bowling, Individually and as Next Friend of Brandon
Floyd Bowling, a minor, Plaintiffs,
v.
The MISSIONARY SERVANTS of the MOST HOLY TRINITY, Defendant-Appellee.
 No. 91-5920.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1992.
 
 Before RALPH B. GUY, Jr., ALAN E. NORRIS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Billy Joe and Texann Bowling filed this diversity action for themselves, and on behalf of their three-year-old son, Brandon, claiming that defendant, Missionary Servants of the Most Holy Trinity ("Missionary Servants"), had invaded their privacy by appropriating Brandon's likeness and by placing the boy and his parents in a false light before the public. They also alleged that defendant's conduct was so outrageous as to cause them severe emotional distress. The lawsuit arose out of defendant's use of Brandon's photograph in mailings sent to solicit contributions. Following discovery, the parties agreed to waive trial and submit the case to the district judge for judgment on the merits, based upon their cross-motions for summary judgment.
 
 
 2
 The district court concluded that the parents' personal claims were without merit, and that, while defendant's conduct did not amount to a tort arising out of outrageous conduct, it did, nevertheless, invade Brandon's privacy. After reviewing briefs on the issue of damages, the court awarded Brandon $100 as compensation for the appropriation of his likeness, but denied his claim for punitive damages.
 
 I.
 
 3
 In January 1989, Brother Richard McCann of the Missionary Servants visited the Little Sisters of the Assumption Order ("Little Sisters") in Wallins Creek, Kentucky, and asked to meet with people to whom the Little Sisters provided aid. Sister Gemma Debaggis brought Brother McCann to the trailer home of Snowbie Saylor, a recent Little Sisters' aid recipient, where he met one of Saylor's daughters, Juanita Lee, and Saylor's grandson, Brandon Bowling. At her deposition, Lee said she consented when she was asked if Brother McCann could take some photographs of her and Brandon. They posed for a picture in which Brandon was sitting on his aunt's lap. She said she was told the picture would be used in some sort of book. She was not advised it would be used as part of a solicitation of funds. Lee said that she reported the incident to her sister, Texann Bowling, and that when Sister Gemma later brought her $100, Texann wanted half of it and "got mad" when she wouldn't give it to her. Lee also said it was her impression that Sister Gemma believed Brandon was her child.
 
 
 4
 The photograph of Brandon and his aunt was used by defendant in a Mothers' Day solicitation to raise funds for the poor. Defendant sent the picture, along with a solicitation letter, to over 125,000 homes. The letter identified Juanita Lee and Brandon Bowling as "Annie and Josh," and begged for the support of this "mother and her son" as well as the "hundreds of mothers and children on our Missions." It was signed by Father Leonard Bachman, and stated that he had recently met and been inspired by the woman in the picture, who struggled and sacrificed for her children. It stated that "Annie and Josh" lived with seven other relatives in a "trailer of sorts ... as dark and dreary as the very future they face," located in a hollow covered with "coal dust and a lifetime accumulation of the hopelessness and despair of poverty." The letter ended with an appeal that recipients "join ... in making Annie's wish for Josh a reality."
 
 
 5
 Snowbie Saylor lived in the trailer visited by Brother McCann. Her daughter, Juanita Lee, lived in a trailer next door. Brandon Bowling and his parents lived some distance away in a house--they were its only occupants. The Bowlings had never received financial assistance from the Little Sisters or defendant.
 
 
 6
 The Mothers' Day solicitation raised over $97,000 in donations for the poor. The Bowlings discovered that Brandon's picture was being used in the solicitations when Sister Gemma Debaggis brought Texann Bowling a $100 check from a man who requested that it be given to the family in the photograph.
 
 II.
 A. Notice of Appeal
 
 7
 Defendant argues that Texann and Brandon Bowling are not parties to this appeal because the caption in the notice of appeal lists as plaintiffs "Billy Joe Bowling, (Plaintiffs) Et Al." The notice of appeal was filed pro se, and was signed by Billy Joe Bowling. In Minority Employees v. Tennessee Dep't of Employment Sec., 901 F.2d 1327 (6th Cir.1990) (en banc), this court held that "appellants must include in the notice of appeal the name of each and every party taking the appeal." Accordingly, Texann Bowling is not a party to this appeal. It is less clear whether Brandon Bowling is a party, since the complaint was captioned "BILLY JOE BOWLING, and wife, TEXANN BOWLING, individually and as next friend of BRANDON FLOYD BOWLING, a minor." One would have to overlook the singular form of the word "friend" in the designation of representative capacity, in order to argue that Billy Joe Bowling appealed in his representative, as well as his individual, capacity. However, even if we were to conclude that Brandon's appeal is properly before this court, his contentions are without merit.
 
 B. Father's Invasion of Privacy Claim
 
 8
 Billy Joe Bowling contends that summary judgment disposing of his claim was inappropriate because there was an unresolved issue of fact concerning whether his privacy was affected by dissemination of Brandon's picture and the inaccurate story which accompanied it. He asserts that because Texann Bowling's nickname is "Ann," and the fund-raising letter referred to the woman in the picture as "Annie," and referred to "Annie's husband," it could have been linked to him as Brandon's father.
 
 
 9
 In Kentucky, the invasion of privacy tort is meant to protect an individual's right to be left alone and be free from unwarranted publicity. McCall v. Courier-Journal & Louisville Times, 623 S.W.2d 882, 887 (Ky.1981); see also Brents v. Morgan, 299 S.W. 967 (Ky.1927). The district court ruled that because the parents were not pictured in the photograph or named in the letter, their privacy was not invaded. According to the court, "[a]nyone who saw the photograph and the letter would believe that it was [Brandon's aunt] and her husband who lived a life of poverty and not Texann and Billy Joe Bowling." In view of Texann Bowling's deposition testimony that no one who received the solicitation would be able to connect Brandon with her and her husband, the district court's determination is supported by the record and therefore not clearly erroneous.
 
 
 10
 Bowling also contends that the district court erred in concluding that there is no right accorded under Kentucky law to recover for injury caused by the invasion of the privacy of a relative, which would apply to him and his wife. He cites Douglas v. Stokes, 149 S.W. 849 (Ky.1912), a case in which the Kentucky Supreme Court permitted recovery by the parents of deceased twins for the emotional distress resulting when a photographer they hired made unauthorized copies of pictures of the children's corpses for his own purposes and copyrighted them. The court permitted the parents to recover for misuse of the photographs.
 
 
 11
 The district court pointed out that the Douglas decision was based upon the special circumstance involved in that case, and that the court emphasized the fact that "[t]he most tender affections of the human heart cluster about the body of one's dead child." Douglas, 149 S.W. at 850. By contrast, Brandon Bowling is very much alive and can seek recovery in his own right. We note that Kentucky courts have not expanded the "relational right of privacy" to cover circumstances like those in this case, and we agree with the district court's determination that there is no reason to conclude that they would do so in light of the favorable view taken by those courts of the Restatement. See Restatement (Second) of Torts § 652I cmt. a (1976) ("The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action ... cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.").
 
 C. Outrageous Conduct Claims
 
 12
 Bowling next argues that the district court erred in determining that defendant had not committed the tort of outrageous conduct. This tort was first recognized by the Kentucky Supreme Court in Craft v. Rice, 671 S.W.2d 247 (Ky.1984), in which the court adopted section 46 of the Restatement (Second) of Torts. That section states: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). As a result, in Kentucky, a plaintiff may maintain such a claim only if he can show: (1) intentional or reckless conduct; (2) conduct outrageous enough to offend the generally accepted standards of decency and morality; (3) a causal connection between such conduct and the plaintiff's emotional distress; and (4) severe emotional distress. Humana of Kentucky, Inc. v. Seitz, 796 S.W.2d 1, 2-3 (Ky.1990).
 
 
 13
 The district court held that plaintiffs' proof failed to satisfy the second and fourth elements. On appeal, Bowling argues that the second element was established when the district judge, ruling on Brandon's false-light claim, indicated that "a reasonable person" would consider the letter's portrayal of the family as pitiful victims of Appalachian poverty living in a tin shack "highly offensive." Bowling does not address the district court's ruling on the fourth element.
 
 
 14
 As nothing in the record indicates that either Billy Joe or Brandon Bowling suffered severe emotional distress, we cannot say that the district court's determination is clearly erroneous. See Restatement (Second) of Torts § 46 cmt. j-k (1965) ("It is only where [emotional distress] is extreme that the liability arises.... Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe."). Because failure to establish the fourth element is fatal to the outrageous conduct claim, we need not address the district court's determination concerning the second element. However, we do note that defendant's behavior in this case appears no more egregious than the behavior deemed as a matter of law not to be outrageous by the Kentucky Supreme Court in Humana of Kentucky. In that case, nurses refused to pay attention to the plaintiff's repeated concerns that she was beginning to experience labor and, consequently, she was left alone to deliver a stillborn baby into a bedpan. When nurses finally arrived, one of them ordered the plaintiff to "shut up" because she was disturbing other patients, and indicated that the baby would be "dispose[d] of" at the hospital. Humana of Kentucky, 796 S.W.2d at 2. The court held that the evidence indicated "at worst, a lack of compassion and lack of taste, but certainly does not comport with the criteria in Craft and in the Restatement § 46." Id. at 4.
 
 D. Child's Invasion of Privacy Claim
 
 15
 Bowling contends that the district court erred in determining that Brandon Bowling was entitled only to $100, as a modeling fee, for the invasion of his privacy. He argues that the damages calculation should have been based upon the $97,620 yielded by the fundraising campaign. He also contends Brandon was entitled to punitive damages.
 
 
 16
 The Kentucky Supreme Court has adopted the principles of the invasion of privacy tort enunciated in the Restatement (Second) of Torts. McCall, 623 S.W.2d at 887. The Restatement provides:
 
 
 17
 (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
 
 
 18
 (2) The right of privacy is invaded by
 
 
 19
 (a) unreasonable intrusion upon the seclusion of another ...; or
 
 
 20
 (b) appropriation of the other's name or likeness ...; or
 
 
 21
 (c) unreasonable publicity given to the other's private life ...; or
 
 
 22
 (d) publicity that unreasonably places the other in a false light before the public....
 
 
 23
 Restatement (Second) of Torts § 652A (1976). The district court determined that under the facts of this case, Brandon Bowling had a valid claim under both the appropriation of likeness and false-light theories, although he had no claim under the intrusion of seclusion or unreasonable publicity theories. The court decided to "concentrate on the appropriation claim" in determining the damages "as the foundation for an award under this theory is strongly suggested by the record." The district court was unable to find Kentucky case law on appropriation of likeness, but stated that the measure of damages for such a claim "would appear to consist of the value of the appropriation to the defendant." The court went on to hold that because defendant essentially used Brandon Bowling as a "commercial model," the appropriate damages were whatever defendant would have had to pay a commercial model for his services. The court arrived on the figure of $100 because that is the amount defendant paid Juanita Lee for her modeling services for the same photograph. Bowling argues that $100 was inappropriate because it represents the cost to defendant, not the value defendant received from Brandon's modeling services.
 
 
 24
 Section 652C of the Restatement (Second) provides that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Appropriation of name or likeness actions are intended to protect "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts § 652C cmt. a. This interest is "in the nature of a property right." Id. Although this cause of action is most commonly used to provide redress for plaintiffs whose names are used without permission to advertise a business or product, "it also applies when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one." Id. at cmt. b; accord Zachini v. Scripps Howard Broadcasting Co., 47 Ohio St.2d 224, 229, 351 N.E.2d 454, 458 (1976).
 
 
 25
 Section 652H of the Restatement provides that the measure of damages for an invasion of privacy is the harm to the plaintiff's privacy resulting from the invasion, the mental distress proved, and special damages resulting from the invasion. Nothing in the record indicates that Brandon suffered mental distress, and Bowling concedes that there are no special damages. Accordingly, damages are to be measured by the harm to Brandon's privacy as a result of the solicitations in which his picture appeared.
 
 
 26
 The comments to section 652H indicate that "[o]ne whose name, likeness or identity is appropriated to the use of another, under § 652C, may recover for the loss of the exclusive use of the value so appropriated." Id. at cmt. a. Under section 652C, liability is created by the defendant's appropriation, to his own use or benefit, of "the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C at cmt. c; see also Zachini, 47 Ohio St.2d at 229-230, 351 N.E.2d at 458 ("[T]he fundamental wrong is the appropriation for one's self of the benefits of another's name, likeness, or identity...."). Here, Brandon had no special reputation, prestige, or commercial or social standing. He is not a famous actor, sports figure, rock star, or philanthropist. Rather, as the district court determined, the "other values" defendant sought from Brandon were associated with his "endearing appearance." And, while the photograph in the record reveals Brandon to be an attractive young lad, it cannot be said that the use of a photograph of another attractive child would not have resulted in the same response from those solicited. Therefore, it was appropriate for the district court to assess damages based on a modeling fee, and the $100 figure appears entirely appropriate in light of the fact that Brandon's aunt was paid $100.
 
 
 27
 No further damages need to be added on the basis of the false-light theory. Actions under the false-light theory are permitted in order to protect "the interest of the individual in not being made to appear before the public in an objectionable false light." Restatement (Second) of Torts § 652E cmt. b. The two basic requirements to sustain such an action are: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (2) the defendant had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which the plaintiff was placed. McCall, 623 S.W.2d at 888 (citing Restatement (Second) of Torts § 652E). The comments in the Restatement provision on damages indicate that when the same act invades a plaintiff's privacy in more than one of the four manners set out in section 652A, he is allowed "only one recovery of his damages upon one or all of the different grounds." Restatement (Second) of Torts § 652A cmt. d. As plaintiffs have shown no specific injury, mental distress, or special damages resulting from the mailings, Brandon is entitled to only nominal damages under the false-light theory, and the $100 award is appropriate for the entire invasion of privacy claim.
 
 
 28
 Bowling's argument that punitive damages should have been awarded is easily disposed of. Kentucky Revised Statutes section 411.184(2) provides that "a plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud, or malice." Under the statute, both oppression and fraud require actual intent to do harm to the plaintiff. The statute defines malice as conduct "specifically intended by the defendant to cause ... injury to plaintiff or conduct that is carried out by the defendant both with flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm." Ky.Rev.Stat.Ann. § 411.184(1)(c) (Baldwin 1991). Defendant used Brandon's picture in order to raise money for charitable purposes. Nothing in the record indicates that it intended to harm Brandon Bowling in any way, and there is certainly no indication that it intended him bodily harm. Therefore, plaintiffs' request for punitive damages was properly denied.
 
 E. Discovery Dispute
 
 29
 Bowling also asserts that the magistrate designated to resolve a discovery dispute improperly denied a motion to compel defendant to answer interrogatories seeking information concerning the people solicited and the use of the amounts received by it in this and past fundraising campaigns. Plaintiffs contended that they needed this information to show that the solicitations reached people who knew the Bowlings, therefore causing them harm, and to refute defendant's claim that it only used Brandon's photograph in this one campaign and had not profited from its use of the photograph. However, because the district court properly determined that the solicitation made no reference to Brandon's parents, and because the proper calculation of Brandon's damages does not depend on whether the mailings were sent to his community or whether the organization profited from the use of his picture, we need not address this contention.
 
 III.
 
 30
 For the reasons stated above, the judgment of the district court is affirmed.
 
 
 31
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 32
 I agree with all of the court's opinion except for its treatment of the false light damages. It is true as the court states that a plaintiff may maintain an action for intrusion of privacy on any of the grounds available, but may secure "only one recovery of his damages upon one or all of the different grounds." RESTATEMENT (SECOND) OF TORTS § 652A cmt. d; McCall v. Courier-Journal & Louisville Times, 623 S.W.2d 882, 888 (Ky.1981), cert. denied, 456 U.S. 975 (1982). The Restatement, however, goes on to state that:
 
 
 33
 A cause of action for invasion of privacy, in any of its four forms, entitles the plaintiff to recover damages for the harm to the particular element of his privacy that is invaded. Thus, one ... whose name, likeness, or identity is appropriated to the use of another, under § 625C, may recover for the loss of the exclusive use of the value so appropriated.... One who is publicly placed in a false light, under § 625E, may recover damages for the harm to his reputation from the position in which he is placed.
 
 
 34
 RESTATEMENT (SECOND) OF TORTS § 652H cmt. a (1976) (emphasis added). Sections 652C and E recognize distinct aspects of privacy, a property-like interest and an interest in identity within the community, respectively. I think the Kentucky Supreme Court would find that the proper measure of Brandon's single recovery takes into account these distinct aspects of his injury. Therefore, the court erred in not considering as a component of the single damage award the harm to Brandon's privacy interest from being placed in a false light.
 
 
 35
 Particularly in light of the egregious conduct on the part of the defendant, I would remand for an award of damages to Brandon for being placed in a false light.[1]
 
 
 
 [1]
 I believe that Brandon's appeal is properly before this court, an issue the court found it unnecessary to decide since it was affording no relief on appeal