Kevin OSBORNE, Appellant,

v.

Charles Anthony PAYNE and the
Roman Catholic Diocese of
Owensboro, Ky., Appellees.

and

Charles Anthony Payne, Appellant,

v.

Kevin Osborne and the Roman Cath-
olic Diocese of Owensboro, Ky.,
Appellees.

Nos. 1999–SC–0616–DG,
1999–SC–0621–DG.

Supreme Court of Kentucky.

Nov. 22, 2000.

Albert William Barber III, Owensboro, for Appellant/Appellee Charles Anthony Payne.

Stephen B. Lee, Owensboro, for Appellant/Appellee Kevin Osborne.

Marvin P. Nunley, McCarroll Nunley & Hartz, Charles J. Kamuf, Kamuf, Yewell, Pace & Condon, Owensboro, for Appellee Roman Catholic Diocese of Owensboro.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which affirmed in part, reversed in part and remanded a judgment of the circuit court which had summarily dismissed the complaint of the husband against a former priest and the Roman Catholic Diocese of Owensboro.

The questions presented are whether the Court of Appeals was in error when it determined that Osborne was not acting within the scope of his employment as a priest when he engaged in an adulterous sexual relationship with the wife; whether the catholic diocese should be held vicariously liable for his actions and whether the husband abandoned his claim that the diocese was negligent. The broader issue is whether the action for intentional infliction of emotional distress or outrage may be brought against a clergyman when the clergyman was sought out for marital counseling but the result was an interference with the marriage because of an illicit sexual relationship.

Payne and his wife were experiencing marital difficulties and went to Osborne, their parish priest, for counseling. Ultimately, Payne and his wife were divorced following his discovery of a 45–day adulterous relationship between his wife and Osborne. Apparently, the relationship did not continue and Osborne left the priesthood. Payne sued the former priest for the tort of outrageous conduct and the Diocese of Owensboro under a vicarious liability theory for its alleged negligent training, screening and supervision of Osborne.

The circuit court gave summary judgment to both defendants on the grounds that adultery can never reach the stage of outrageous conduct and that the claim of outrage was actually a claim for interference with marital relations or alienation of spousal affection which had previously been abolished by this Court in *Hoye v. Hoye*, Ky., 824 S.W.2d 422 (1992). The Court of Appeals affirmed the dismissal of the diocese but reversed the summary judgment in favor of Osborne because there was a special relationship which distinguished the conduct of the former priest from that of a traditional adulterer, and that a jury question was presented as to whether his behavior was outrageous conduct. This Court accepted discretionary review.

## I. Osborne

During the summary judgment proceedings, the depositions of both Charles Payne and Kevin Osborne were taken. Payne testified that as a result of discovering the adulterous affair, he suffered a nervous breakdown, lost his religion, lost his house and lost his job as well as his wife. Osborne testified that after the sexual affair, he had resigned from the ministry and was no longer employed as a priest and had moved to Tennessee.

*Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), is the seminal case involving the tort of intentional infliction of emotional distress or outrageous conduct in Kentucky. In order to establish such a claim, the plaintiff must prove the following elements: The wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the

wrongdoer's conduct and the emotional distress and the distress suffered must be severe. As noted in *Kroger Company v. Willgruber*, Ky., 920 S.W.2d 61 (1996), the tort is not available for "petty insults, unkind words and minor indignities." Nor is it to compensate for behavior that is "cold, callous and lacking sensitivity." *Humana of Ky., Inc. v. Seitz*, Ky., 796 S.W.2d 1 (1990). Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees. *Willgruber, supra.*

The circuit court summarily dismissed the claim against the former priest for failure to allege misconduct that was sufficient to satisfy the outrageous element of the tort, relying on *Whittington v. Whittington*, Ky.App., 766 S.W.2d 73 (1989). In that case, the claim of the wife was dismissed under CR 12.02 for failure to state a claim upon which relief can be granted; the circuit court concluded that ordinary fraud and adultery can never reach the status of outrageous conduct.

Here, the most important element of the complaint by Payne, as demonstrated by his deposition testimony, is that he was injured as a result of the misconduct of Osborne while in a special relationship as priest and counselor. Moreover, the alleged exploitation of that relationship occurred in a situation when the former priest was aware that the marriage partners were most vulnerable.

 This Court in *Seitz, supra,* indicated that the special relationship of patient to nurse had not been violated, but left for "another day" a decision as to whether such special relationships are part of the tort of outrageous conduct. In this case, as distinguished from *Seitz,* Payne has presented sufficient evidence from which a jury could conclude that he had a special relationship with his priest or marriage counselor and that this special relationship was violated in an outrageous fashion so as to cause him severe emotional distress. It is the concept of *special relationship* that distinguishes this factual situation from *Whittington.* The establishment of the existence of a special relationship between the parties can make conduct outrageous. The use of a confidential relationship between Payne and his priest counselor is the heart of his lawsuit. The relationship itself cannot be used to give rise to a presumption of outrageousness, rather the relationship between the parties, is an aid in determining whether the conduct itself is outrageous.

For the purpose of summary judgment, it is evident that the former priest used his relationship with the husband and the wife to obtain a sexual affair with the wife. Conduct and relationship can form the basis for outrageous conduct. It must be remembered that pursuant to CR 56.03 the grounds for summary judgment are: 1) there is no genuine issue as to any material fact, and 2) the moving party is entitled to judgment as a matter of law. This Court has repeatedly announced that summary judgments are to be cautiously applied and not to be used as a substitute for trial. A movant must convince the court, based upon evidence in the record, of the nonexistence of a material fact issue, and a motion will not be granted unless the right to summary judgment is shown with such clarity that there is no room left for controversy. Osborne has not satisfied that requirement and cannot seek refuge in summary dismissal. Reliance on *Whittington* does not solve the issue as to whether the conduct of Osborne was sufficiently outrageous to allow the matter to proceed to a jury verdict.

 The mere fact that in recent years there has been apparently an increasing number of claims against clergy for sexual misconduct does not make the behavior any less outrageous or disgraceful or otherwise actionable. Some jurisdictions have denied relief under a theory of intentional infliction of emotional distress after concluding that the claims were merely an attempt to bring amatory actions which were no longer viable. *See*

*Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988). However, we are persuaded by the reasoning used in the cases noted by the Court of Appeals including *Destefano v. Grabrian,* 763 P.2d 275, 285 (Colo.1988), in which it was stated that: a plaintiff will not be able to mask one of the abolished actions ... behind a common law label. However, if the essence of the complaint is directed to a cause of action other than one which has been abolished, that claim is legally cognizable. *See also Figueiredo–Torres v. Nickel,* 321 Md. 642, 584 A.2d 69 (1991).

■ We note that this Court abolished the action for breach of promise to marry in *Gilbert v. Barkes,* Ky., 987 S.W.2d 772 (1999), but stated that it in no way prohibited other remedies, such as claims for breach of contract and intentional infliction of emotional distress, should a party be able to make such a case. It should be emphasized that these claims must be approached on a case-by-case basis, and there is no blanket or automatic imposition of a cause of action in the clergy/counselor relationship.

## II. The Diocese

■ Payne next argues that Osborne, as a priest, was engaging in an activity sanctioned by the church and ordinarily performed by a priest, that is, marriage counseling. He argues that it was because Osborne was a priest that he was called upon by them; that his help was sought and that he was invited into the home. Payne reasons that the diocese should be vicariously liable for the actions of Osborne. We cannot agree. To accept such a theory would in effect require the diocese to become an absolute insurer for the behavior of anyone who was in the priesthood and would result in strict liability on the part of the diocese for any actionable wrong involving a parishioner. We must conclude that such an argument is absurd. Certainly, the scope of employment of a priest could include marriage counseling, but it clearly does not include adultery.

■ The critical analysis is whether the employee or agent was acting within the scope of his employment at the time of his tortious act. *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81 (1946), provides that for it to be within the scope of its employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized. A principal is not liable under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment. *Hennis v. B.F. Goodrich Co., Inc.,* Ky., 349 S.W.2d 680 (1961). In this situation, it is the abuse by the priest of his position that exceeds the scope of his employment. It is beyond question that Osborne was not advancing any cause of the diocese or engaging in behavior appropriate to the normal scope of his employment. There are a variety of cases from other jurisdictions that comport with our conclusion in this matter. *See Amato v. Greenquist,* 287 Ill.App.3d 921, 223 Ill.Dec. 261, 679 N.E.2d 446, 455 (1997); *L.L.N v. Clauder,* 203 Wis.2d 570, 552 N.W.2d 879 (Ct.App.1995) (reversed on other grounds in *L.L.N. v. Clauder,* 209 Wis.2d 674, 563 N.W.2d 434 (1995)) H.R.B. v. J.L.G., 913 S.W.2d 92 (Mo.Ct.App.1995); *Gibson v. Brewer,* 952 S.W.2d 239 (Mo.1997).

■ Here, Payne has failed to present any evidence in the record that Osborne had a history of sexual misconduct involving parishioners or that the diocese had any knowledge that Osborne might conceivably engage in such misconduct. Consequently, we must conclude that the summary judgment granted by the circuit court and affirmed by the Court of Appeals as to the diocese was correct. There was no basis to support a claim of independent negligence by the diocese so as to support a rejection of the motion for a summary judgment. We recognize that independent negligence can be a valid

claim under the proper circumstances as found in *Roman Catholic Diocese of Covington v. Secter,* Ky.App., 966 S.W.2d 286 (1998).

We must also note that Payne has failed to preserve properly his claim against the diocese. Civil Rule 76.03(8), provides that a party shall be limited on appeal to the issues in the prehearing statement before the Court of Appeals. Here, the civil appeal prehearing statement contained no issue regarding the diocese. The argument sections of the brief of Payne in the Court of Appeals referred only to the ruling of the circuit court regarding the conduct of Osborne. The failure to argue before the Court of Appeals that summary judgment was improper as to the diocese is tantamount to a waiver. *Cf. Hall v. Kolb,* Ky., 374 S.W.2d 854 (1964). Any part of a judgment appealed from that is not briefed is affirmed as being confessed. *Cf. Stansbury v. Smith,* Ky., 424 S.W.2d 571 (1968).

We conclude that members of the clergy can be liable for damages resulting for their intentional tortious conduct, commonly called the tort of outrage, when it constitutes the intentional infliction of emotional distress. It is a combination of relationship and conduct that distinguishes this kind of behavior from adultery which has been effectively abolished as a tort claim in Kentucky. Thus, Payne is allowed to proceed with his claim in circuit court against Osborne. However, there is nothing to support a claim of vicarious liability for the conduct of the former priest against the diocese, and it cannot be held vicariously liable in this matter.

The judgment of the Court of Appeals is affirmed and this matter is remanded for proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

GRAVES, J., concurs in result only.

KELLER, J., concurs but believes the issue as to the diocese was preserved.