Joe HICKEY, et al., Plaintiffs,

v.

John HAYSE, Defendant.

Civil Action No. 3:99CV–782–H.

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 17, 2001.

Daniel T. Taylor, III, Louisville, KY, for Plaintiff.

Gregory Scott Gowen, Angela Turner Dunham, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiffs Joe Hickey, Kathleen Hickey and Stephanie Hickey (the "Hickeys") were at their home watching television when the Defendant, City of Louisville police officer John Hayse, entered their home without a warrant and arrested a visitor, Joey Lane. Understandably the Hickeys were shocked and offended. They allege that Hayse violated their Fourth, Fifth and Sixth Amendment rights under the United States Constitution by

illegally entering their home without a warrant and without knocking and announcing his presence, and by using excessive force against Plaintiffs to effect the arrest of Lane. Plaintiffs also alleged trespass, outrageous conduct, and assault under state law, for consideration under the Court's pendent jurisdiction.

◼ Defendant, citing qualified immunity, moved for summary judgment on all claims. When a defendant claims qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Had the Court not ruled on the request for qualified immunity, Defendant could have sought an appeal and delayed the trial. In open court on December 11, 2001, the Court found that Defendant was entitled to qualified immunity, and consequently dismissed Plaintiffs' claims. This written opinion further clarifies the Court's reasoning.

### I.

There seems to be no dispute as to the material facts. The Court will recite them in a manner most favorable to Plaintiffs.

In the late hours of December 10, 1998, police received a call from Lisa Cox at 321 N. 30th Street. Cox was at her parents' home where she claimed her brother, Joey Lane, had hit her. She gave a description of Lane, including how he was dressed and the general direction in which he had been headed when he left the home.

Officer Robert Hensler responded. When Hensler arrived at the residence, he spoke with Cox, who told him that during an altercation involving alcohol Lane had hit her twice in the face. Cox had swelling on her cheek and a black left eye. Hensler completed an incident report on the situation, which Cox signed.

Later, Lane returned to his parents' home, prompting his father to call the police. Officer Hayse was dispatched to the residence. The dispatch described the situation as domestic violence with a son outside slashing tires. Hayse also knew about the earlier run for domestic violence. That report provided the description of Lane, who was still at large.

Lane had left the premises by the time Hayse arrived. Hayse spoke with Lane's mother and Cox. Cox, who still had signs of the earlier physical assault about her face, told Hayse of the earlier situation and that she had filled out a complaint. The women told Hayse of their concern and fear that Lane would return yet again, noting that he had been drinking and was violent. Hayse had no reason to doubt these complaints.

Hayse began searching for Lane. He saw a man fitting the description exit a truck. Hayse began walking towards the subject, identifying himself as a police officer and attempting to identify the subject as Joey Lane by calling out his name. Lane turned around when his name was called. Hayse again identified himself. Lane began running towards the Hickey home, which was nearby. Hayse pursued Lane, yelling at him to stop.

When Lane arrived at the Hickey home, Plaintiffs were there, sitting down and watching television. Lane was the brother-in-law of Joe Hickey. Joe Hickey opened the door. Lane asked whether he could lie down. He was given permission to do so and the family began watching television again. The Hickeys had no idea of Lane's previous activities or that he was being followed.

Hayse had pursued Lane to the Hickey home. He was close enough to see Lane enter the home. Plaintiffs estimate that between five and ten minutes after Lane entered the house, they heard something

on the porch. Joe Hickey saw a light on the front porch, got up and opened the front door. When he opened the door he saw Hayse, who was in uniform and had opened the outer storm door, standing there. Hayse immediately began shouting "where is he" and "which way did he go." Hickey acted as though he did not know to whom Hayse was referring and asked Hayse if he had a warrant.

Hayse kept shouting about Lane and attempted to enter the residence to apprehend him. Hickey physically blocked the passage. Hayse pushed Hickey out of the way and entered the home. This was accompanied by shouting and swearing by Hayse. No other force was used. Hayse immediately saw Lane and arrested him. Hayse was out of the house in five minutes.

## II.

A government official enjoys qualified immunity if his conduct does not violate clearly established constitutional rights of which a reasonable person should have known. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999). The proper inquiry is not whether the claimed right existed in the abstract, but whether a reasonable official would have known that the challenged conduct violated that right. Under this test an official is immune if officers of reasonable competence could disagree on whether the conduct violated a constitutional right. *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir.1991) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

The initial inquiry in a qualified immunity analysis is whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, at 201, 121 S.Ct. at 2156. If a violation could be made out on a favorable view of Plaintiff's submissions, the next step is to ask whether the right was clearly established. *Id.*

To find that an officer has violated the clearly established constitutional right negating the defense of qualified immunity, the trial court must find binding precedent establishing the right. *Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171, 1174 (6th Cir.1988). To defeat a claim of qualified immunity, the contours of the alleged right to have been violated must have been sufficiently clear that a reasonable officer would understand that what he was doing violated that law. *Saucier* at 202, 121 S.Ct. at 2156. It must be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

## III.

Plaintiffs' first claim is that Defendant violated their Fourth Amendment rights by entering their home without proper justification. The Fourth Amendment, incorporated by the Fourteenth Amendment and thus applicable to state and local governments, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is "a matter of principle, that a search or seizure carried out on a [person's] premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The Sixth Circuit Court of Appeals has found the presence of such exigent circumstances where "(1) the officers involved were in hot pursuit of a fleeing suspect; (2) the suspect posed an immediate threat to arresting officers or to the public; and

(3) immediate police action was necessary to prevent the destruction of vital evidence or to prevent the escape of a known criminal." *Ingram v. City of Columbus,* 185 F.3d 579, 587 (6th Cir.1999).

The *Ingram* court, citing *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), noted also that "the gravity of the underlying offense is an important factor to be considered when determining whether any exigency exists." *Ingram* at 587 (quotation omitted). The Supreme Court's test in *Welch* inquires whether the underlying offense is a "minor" one "for which no imprisonment is possible." *See Welsh* at 754, 104 S.Ct. 2091. Applying *Welsh,* the *Ingram* court noted that, in this context, the pursuing officer need only have had probable cause to believe that the suspect has committed an offense deserving of imprisonment. *Ingram* at 587–88.

■ Under the facts here, Hayse clearly had probable cause to believe that Lane had committed an offense for which imprisonment would be possible. Lane had struck and inflicted serious physical harm upon Cox, which Hayse could reasonably have believed constituted assault in the second degree, a Class C felony under K.R.S. § 508.020. Hayse also knew that Lane had slashed his parents' tires, demonstrating further tendencies that evening for domestic violence. Cox, whose face still showed signs of Lane's physical assault, had told Hayse she feared that Lane, who had been drinking, would return later to inflict further injury upon her. In this context, Lane's attempt to flee arrest raises even more concerns. From the record, Hayse not only had probable cause to believe that Lane had committed an offense for which imprisonment was possible, but also that he "posed an immediate threat to arresting officers or to the public." *Ingram* at 587.

■ Plaintiffs, averring that Hayse arrived at their residence between five and ten minutes after Lane had come there seeking sanctuary, question whether Hayse was indeed in "hot pursuit." In *Welsh,* at 753, 104 S.Ct. 2091, the Supreme Court remarked that hot pursuit is "immediate or continuous pursuit of the [suspect] from the scene of a crime." The record here indicates that Hayse searched for Lane, saw a man fitting Lane's description and attempted to identify him, and then gave chase once that man, who proved to be Lane, ran away after Hayse's identification of himself as a police officer. That Hayse caught up with Lane at the Hickey home a mere ten minutes, at most, after Lane's arrival, does not demonstrate that Hayse was no longer in immediate or continuous pursuit. *Compare with O'Brien v. City of Grand Rapids,* 23 F.3d 990, 997 (6th Cir.1994) (finding unavailability of hot pursuit exception where officer "chose not to pursue [suspect] at the initial confrontation and instead called for backup to surround the house and secure the area, thereby slowing down and controlling the action.").

■ This Court's determination that Defendant's entry was privileged is neither a condemnation of Plaintiffs' actions nor an unqualified endorsement of Defendant's behavior. Certainly, a reasonable person would have been unsettled by the sudden appearance of a peace officer demanding entry, and troubled by the officer's unnecessary use of profanity once inside the residence. However, "[n]ot every breach of etiquette poses a constitutional issue." *United States v. Sedillo,* 496 F.2d 151, 152 (9th Cir.1974). The Fourth Amendment prohibits unreasonable searches and seizures, but it does not require courts to examine a police officer's comportment and decorum *ex post facto* and determine whether words or gestures extraneous to

his official action were offensive. The pertinent question here is whether Defendant was privileged to enter the residence in the fashion that he did. Viewing the facts presented in the light most favorable to the nonmovants, the Court concludes that Hayse was in immediate, continuous and hot pursuit of Lane, that Lane posed an immediate threat to the public—specifically his sister—and that immediate police action was necessary to prevent his escape. Almost every reasonable officer in these circumstances would believe he was entitled to follow such a suspect into the house. Accordingly, the Court finds that no reasonable jury could conclude that Defendant violated Plaintiffs' Fourth Amendment rights.

## IV.

 Plaintiffs allege next that Defendant violated their Fourth Amendment rights by failing to knock and announce his presence prior to entry. "Absent certain exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority. The knock-and-announce rule protects several important interests, including (1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy in his or her house. At its heart, the rule exists to protect the occupants of private residences." *United States v. Dice*, 200 F.3d 978, 982 (6th Cir.2000) (citations omitted). Unless exigent circumstances exist, the knock-and-announce rule applies even to an entry based upon a valid warrant. In the circumstances here, Defendant had no warrant, but justifies his entry upon the exigent circumstances, which the Court has already discussed. Whether exigent circumstances exist to avoid knock-and-

announce may be a different analysis than for exigent circumstances to enter.

 However, the knock-and-announce issue is resolved without an exigent circumstances analysis. The Court concludes that the knock-and-announce rule is immaterial to these circumstances because Joe Hickey heard someone at his home entrance, opened the door and was aware of Defendant's presence prior to his entry. Consequently, Defendant was under no obligation to knock and announce his presence because it was already known. *See Ingram*, at 590 (knocking and announcing unnecessary where merely a "superfluous act"). Under these circumstances, any reasonable officer would assume that there was no need to knock and no necessity of formally announcing his presence as a police officer. Consequently, Defendant is entitled to qualified immunity.

## V.

Plaintiff Joe Hickey alleges that Defendant violated his Fourth Amendment rights by using excessive force against him during Defendant's entry into the home and his arrest of Lane. Of course, if Defendant had no right to be inside the home, then he had no right to use force. However, the Court has already determined that a reasonable officer would believe that he was entitled to entry under the circumstances.

 Plaintiff's excessive force claim must be analyzed under the Fourth Amendment. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)

(quotations omitted). This test of reasonableness requires careful attention to the facts and circumstances of the case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The reasonableness of a particular use of force must be judged from the prospective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Here, Hayse knew that he was pursuing an individual who had beaten one person and threatened others on that very evening. He knew that these persons felt fearful. He knew that to allow Lane to escape could endanger other persons. Most importantly, it appeared certain that Lane was in the Hickey home. When Joe Hickey stood in Defendant's way, Defendant pushed or shoved him aside, shouting and using profanity. The force caused no actual injury.

Considering Lane's potential dangerousness, the immediate need to apprehend him and the lack of injury which would be caused by pushing Hickey aside, any reasonable officer would believe that such action was absolutely the least amount of force necessary to accomplish the legitimate arrest. The Court does not doubt that the Hickeys were offended and perhaps shocked by Defendant's shouting and profanity. However, this does not directly impact the excessive force analysis. Where the governmental need to apprehend a potentially dangerous person was legitimate and where the physical force used was so limited, it is difficult to imagine how less force could have been applied to accomplish the arrest. Consequently, the Court concludes that Defendant is entitled to qualified immunity on Plaintiffs' claim of excessive force.

## VI.

Plaintiffs allege violations of their Fifth and Sixth Amendment rights, but offer no facts or law to support their allegations. Indeed, the Court is at a loss to comprehend any basis for the assertion of these claims. Plaintiffs have not alleged that they have been placed in double jeopardy, forced to testify against themselves, or deprived of life, liberty or property without due process of law. Nor have Plaintiffs alleged that their Sixth Amendment rights as criminal defendants have been violated. The Court summarily dismisses these claims.

## VII.

Plaintiffs sue also under state law for intentional trespass. "Trespass to realty is an entry on another's possession unlawfully and with force." 87 C.J.S. *Trespass* § 12 (1954). As noted in Section III, *supra,* Defendant did not enter upon Plaintiffs' property unlawfully. Further, it is well settled that "a law enforcement officer is privileged to commit a trespass if he is exercising his lawful authority and if he exercises it in a reasonable manner, causing no unnecessary harm." *Downs v. United States,* 522 F.2d 990, 1003 (6th Cir.1975). Clearly, in entering Plaintiffs' property, Defendant exercised his lawful authority in a reasonable manner and caused no unnecessary harm. Consequently, the Court must dismiss this claim.

## VIII.

Plaintiffs seek state law damages for the tort of outrageous conduct. In *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1 (Ky.1990), the Supreme Court of Kentucky held that in order to prove outrageous conduct, the plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting *Restatement (Second), Torts* § 46 (1979), comment d); *see also Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783, 788–89 (E.D.Ky.1993), *aff'd,* 40 F.3d 796 (6th Cir. 1994).

The Court concludes that Defendant's conduct was neither outrageous in character nor extreme in degree.

## IX.

 Finally, the Court considers Plaintiff Joe Hickey's state tort law claim of assault, which is "a tort which merely requires the threat of unwanted touching of the victim." *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky.App.2001). The Court has already concluded that no reasonable jury could find that Defendant acted outside his valid authority, or that he used force in excess of that reasonably necessary to apprehend Lane. Because Kentucky law also has adopted the concept of qualified immunity, *see McCollum v. Garrett,* 880 S.W.2d 530 (Ky.1994), Plaintiff's state law claim of assault must fail.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

Defendant John Hayse has moved for summary judgment on all claims against him. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion is SUSTAINED, and all claims against him are DISMISSED WITH PREJUDICE.

This is a final and appealable order.