ROBERT M. TERRY *v.* GEORGE T. HUBBELL ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. 86804
AT NEW HAVEN

Memorandum filed August 15, 1960

*John P. Hodgson,* of Hartford, for the plaintiff.

*Cummings & Lockwood,* of Stamford, for the defendants.

HOUSE, J. This is an action for libel. The relevant circumstances established by the evidence and pleadings are as follows: In 1955, the plaintiff became a director and the president of the Seymour Manufacturing Company and continued to hold these positions until October, 1957. His salary was $42,000 a year. At a stockholders' meeting held at that time, there was a marked division of opinion among the stockholders concerning the management of the affairs of the corporation, and a majority of the stock was voted for a slate of directors which did not include the plaintiff. He thereby became ineligible to serve as an officer of the corporation, and a directors' meeting following the stockholders' meeting elected the named defendant as president of the corporation as successor to the plaintiff. At the same time, the other defendant, Keefe, was elected as executive vice president and treasurer.

About one week after the defendants assumed their new positions, Hubbell's secretary, who also served as secretary for Keefe and for Raeburn, who had been company treasurer but was demoted to assistant treasurer at the time of Keefe's designation as treasurer, placed on Hubbell's desk a "pay roll voucher form." This form had been designed by the plaintiff for office use in connection with changes in pay roll and was an official company record for internal corporate use only. The form was designed to record almost every conceivable bit of pertinent information about an employee in so far as it related to his employment and compensation. One section was devoted to details concerning "Separation from Service." In this portion of the form there were listed across the page on one line several common causes for separation from employment, with small square boxes between each stated cause, it being obvious that it was intended that a mark in the appropriate box would indicate for the company record the reason for separation from service. The printed reasons for separation were listed in order across the page as "advance notice," "layoff," "discharged for cause," "resigned," "retired," "probitionary [sic] work not accepted," and "deceased."

Hubbell, using the form for the first time, examined the stated reasons for separation and believed that of the reasons indicated on the form that indicating "resigned" most nearly approximated the situation, placed an "x" in the small box in front of the word "resigned" and signed the form in quadruplicate. He had previously directed that the plaintiff be compensated through October 31, and this direction was noted on the form. This direction provided an unearned benefit of $1200 for the plaintiff, since his services had been terminated on October 21. A close examination of the form and the position of

the printed boxes with relation to the reasons for separation would have indicated that, although preceding the first reason there was the same blank space as was occupied by the boxes, in fact there was no box there, so that the form was designed to have the appropriate box following the specific reason marked, rather than the box immediately preceding the specific reason. As a result, although Hubbell believed he was using the appropriate box to indicate that the plaintiff had resigned, and therefore placed the "x" in the box before that word, that box was in fact intended to apply to the preceding reason—"discharged for cause." Hubbell in fact did not believe that the plaintiff had been discharged for cause and had no intention of so indicating.

After Hubbell signed the form, it, in the course of regular office routine, went to the desk of the defendant Keefe. He had never seen it before, noted Hubbell's signature and added his initials following the words on the form "reviewed by." Their secretary then placed the quadruplicate form in an envelope, sealed it with scotch tape and forwarded it in usual office routine to Henry, the pay roll supervisor. Henry signed the form in the space indicating it was recorded by the paymaster, removed one copy for his records and placed this copy in a locked metal cabinet. Only he and his assistant had keys to this locked cabinet. He did not show the form to any other person nor copy it nor cause a copy to be made. The remaining three copies he sent in a sealed envelope to Raeburn, then assistant treasurer, to be kept in a locked vault in the treasurer's office. This was the usual office procedure in connection with pay roll changes affecting executives of the corporation.

The next undisputed incident was a letter from the plaintiff's attorney dated November 8, 1957, to Hubbell, advising him that the existence of the pay roll voucher had been brought to his attention and

demanding a retraction. Hubbell replied to the demand, stating that a clerical error had been made, that the reason for Terry's separation was his failure to be re-elected, that the voucher was being corrected and that the correction would be given the same publicity as had been given to the original. All four copies of the original voucher were then destroyed and a "corrected voucher" was processed.

The circumstances and simultaneous events, including the close friendship of the demoted Raeburn with the plaintiff and the association of both with the dissenting stockholders in connection with litigation, involving the Seymour Manufacturing Company, simultaneously brought by the attorney for this plaintiff, strongly support the assertion of the defendants that it was Raeburn, the plaintiff's friend and demoted treasurer, who clandestinely procured a photostatic copy of the voucher from the locked corporate records and thereby permitted knowledge of its existence to extend beyond the immediate office staff concerned with it. Whether this is what happened and whether or not the action was a violation of § 53-267 of the General Statutes, as asserted by counsel for the defendants, are, however, immaterial to a decision of the present proceedings.

The present writ, summons and complaint, seeking damages of $100,000 for the alleged libel, were issued on November 16. The news of the suit, coupled with the simultaneous litigation involving the Seymour Manufacturing Company, received wide publicity in a newspaper account in the Ansonia "Evening Sentinel."

It is pertinent to note that the plaintiff's direct testimony was limited to his identification and that he was president of the corporation from 1955 to 1957. There was no evidence adduced to support the

allegation that he was "a person of unimpeachable integrity and outstanding ability." Also, by amendment to the complaint dated March 20, 1958, the plaintiff expressly disclaimed any claim for special damages, stating, "The damages claimed are general damages only, i.e. for the injury to the plaintiff's reputation and for the humiliation and mental suffering which the libel caused him." There was no evidence of any actual damage to the plaintiff nor any that he had actually suffered any distress or embarrassment or humiliation. The plaintiff relies upon the rule that when defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation which need be neither pleaded nor proved. See *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 308; *Proto* v. *Bridgeport Herald Corporation*, 136 Conn. 557, 571; 53 C.J.S. 378, § 262.

Counsel on both sides have exhaustively researched the law on actions for defamation and copiously briefed the authorities on the multitude of fine points involved in the determination of a libel action. Their labor is indicated by the forty-three paragraphs of the defendants' claims of law, which include "Claims of Law," "Further Claims of Law," "Supplemental Claims of Law," an addendum to a claim, "Final Claims of Law," and "Ultimate Claims of Law." It is, however, unnecessary to the decision of this case to pass upon and review the whole complicated law of libel, and the court will resist the temptation to re-examine and restate the general law as it might be applied to every conceivable aspect of this case. The application of a few well-established general principles suffices for a determination of the cause.

One basic material determination of the court is that there was no malice on the part of either of these defendants. There was no malice in fact in

the sense of hatred, spite or ill will, nor was there malice which might be implied from some improper or unjustifiable motive or intent. See *Proto* v. *Bridgeport Herald Corporation,* supra, 564; *Sandora* v. *Times Co.,* 113 Conn. 574, 579, 582 n. The wrong box on the form was checked by understandable error. Furthermore, there was a retraction, and a correction of the error, upon notice and demand by the plaintiff. Under these circumstances, the plaintiff is not entitled to damages.

Damages in actions for libel are governed by a provision in the General Statutes. The relevant section in effect at the time of this incident was § 7983 of the 1949 Revision, now § 52-237 of the General Statutes, which provides as follows: "In any action for a libel the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by him in writing to retract the libelous charge, in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved." The plaintiff has failed to prove either malice in fact or that the defendants, after having been requested by the plaintiff in writing to retract the charge, failed to do so. No actual damages have been specially alleged or proved. Under these circumstances, the plaintiff is not entitled to recover damages. *Carr* v. *Holbrook,* 15 Conn. Sup. 448.

Not only has the plaintiff failed to prove any actual malice in the sense of malignity or personal ill will but he has failed to prove any malice implied from any improper or unjustifiable motive. See *Wynne* v. *Parsons,* 57 Conn. 73; *Gray* v. *Mossman,* 88 Conn. 247, 251; *Charles Parker Co.* v. *Silver City Crystal Co.,* 142 Conn. 605, 615. Upon receipt of the request for plaintiff's attorney, all copies of the

offensive voucher were promptly destroyed, a corrected voucher was substituted, it was acknowledged that the original voucher was in error, and the correction was given, by the defendants, the same publicity as had been given to the original—which was minimal in any event. It follows that even if the plaintiff were successful in establishing a libel he has not, under the statute, established that he is entitled to any damages.

Whether the erroneous marking of the box "discharged for cause" constituted a libel per se is a question not entirely free from doubt. Libel has been defined as "a false and malicious publication of a person which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him." *Donaghue* v. *Gaffy,* 54 Conn. 257, 268; *Burns* v. *Telegram Publishing Co.,* 89 Conn. 549, 552. "Libel is actionable per se if it charges 'improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business.' *Proto* v. *Bridgeport Herald Corporation,* supra, 566; *Corsello* v. *Emerson Bros., Inc.,* 106 Conn. 127, 130, . . .; *Wynne* v. *Parsons* [supra, 75]. . . ." *Charles Parker Co.* v. *Silver Crystal Co.,* supra, 612.

"Words claimed to be slanderous are to be given their natural and ordinary meaning and to be understood in the sense which hearers of common and reasonable understanding would ascribe to them; and where their meaning is not apparent upon their face it is for the jury to determine what it was. *Carey* v. *Woodruff,* 89 Conn. 304, 308 . . .; *Donaghue* v. *Gaffy* [supra, 266] . . .; *Tuttle* v. *Bishop,* 30 Conn. 80, 84. . . . Whether or not an utterance is slanderous *per se* depends, not upon the necessity of an innuendo to make clear its purport, but upon the nature of the charge embodied in it, taking it in

the sense in which common and reasonable minds would understand it. Odgers on Libel & Slander (4th Ed.) pp. 372, 377; Newell on Slander & Libel (3d Ed.) §§ 1011, 1012." *Ventresca* v. *Kissner,* 105 Conn. 533, 535.

In the present circumstance, as already mentioned, there was no malice in the marking of the voucher. Taken in their "natural and ordinary meaning," the words "discharged for cause" mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance which operated to produce that effect. It is concluded that under the circumstances the marking of the box "discharged for cause" did not constitute a libel per se.

In any event, the plaintiff cannot prevail because the defendants have pleaded and proved the existence of a qualified privilege. The essential elements of this defense are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner to proper parties. 33 Am. Jur. 124 § 126, 179 § 189; see *Charles Parker Co.* v. *Silver City Crystal Co.,* supra, 615.

The pay roll voucher form was a confidential corporate record intended solely for internal corporate use in connection with a proper corporate function. It was kept under lock and key in the corporate files. There was no malice in fact or lack of good faith in its execution or recording. There was no communication by the defendants of the contents of the record beyond the immediate corporate officers and employees necessarily involved in the adjustment of the internal pay roll records of the corporation. The record was qualifiedly privileged and there was no abuse of the privilege. *Flanagan* v. *McLane,* 87 Conn. 220, 222; *Denver Public Ware-*

*house Co.* v. *Holloway,* 34 Colo. 432, 440; *Bacon* v. *Michigan Cent. R. Co.,* 66 Mich. 166, 170; *Jorgensen* v. *Pennsylvania R. Co.,* 25 N.J. 541, 569; 1 Harper & James, Torts § 5.26; Restatement, 3 Torts § 596; 53 C.J.S. 186, § 109; see notes, 66 A.L.R. 1499, 5 A.L.R. 455; 33 Am. Jur. 166, § 171; Newell, Slander and Libel (4th Ed.) § 432, p. 460.

It is concluded that the plaintiff has failed to establish the liability for libel of either of the defendants. Accordingly, judgment may enter for the defendants.