[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of the discharge of the plaintiff, Kunle Olumide, on November 4, 1991 by the defendant, Travelers Insurance Company [Travelers]. According to the plaintiff's complaint, he was both employed and insured by Travelers at the time of the relevant events. The plaintiff's termination was based upon Travelers' conclusion that the plaintiff acted fraudulently by filing a false insurance claim with it for damage to his automobile. This conclusion also provided the reason for Travelers' decision not to pay the full amounts claimed by the plaintiff for his losses under his automobile insurance policy.
The plaintiff filed a revised complaint, dated May 21, 1992, asserting five counts: (1) wrongful discharge; (2) intentional infliction of emotional distress; (3) unintentional infliction of emotional distress; (4) defamation; and (5) breach of contract.
In September of 1990, the plaintiff filed a claim for damages to his automobile with Allstate Insurance Company [Allstate], his insurance carrier at that time. Included in this claim was damage to the front bumper of the plaintiff's car. (Olumide Dep. Vol. I, p. 39; Vol. II, pp. 351-53). On September 17, 1990, Allstate issued a check to the plaintiff in the amount of nine hundred sixty-three dollars and seventy-nine cents ($963.79) for damages claimed. (Attachment A to Defendant's Memorandum in Support of Summary Judgment). The plaintiff, however, did not use the money received from Allstate to repair his vehicle. (Olumide Dep. Vol. II, pp. 282-85; Attachment B to Defendant's Memorandum in Support of Summary Judgment). CT Page 1179
Subsequently, the plaintiff became employed by Travelers, and purchased an automobile insurance policy from it, canceling his policy with Allstate. In September of 1991, the plaintiff filed a claim with the Travelers regarding damage to the same vehicle. Included in this claim was damage to the front bumper of the plaintiff's car. (Olumide's Dep. Vol. I, p. 57; Vol. II, pp. 197-224; See also Attachments B, C, and D to Defendant's Memorandum in Support of Summary Judgment).
On October 15, 1991, the plaintiff was interviewed by the claims supervisor for Travelers, Mireille S. Daigenault. The interview was tape recorded with prior notice to the plaintiff. During this interview, the following dialogue took place:
Ms. Daigenault: Okay, you said previously that you had no other, no accidents with your car, was there any old damage on your car, did you ever hit anything else?
Plaintiff: No.
Ms. Daigenault: Or did anybody ever hit you?
Plaintiff: I never hit anything else except that before this incident, maybe a little while ago, on the driver's side of the car, um this was like it hit out. I just park it and came out, it was dented by someone.
Ms. Daigenault: That was what side?
Plaintiff: The driver's side of the car.
* * *
Ms. Daigenault: When did that happen?
Plaintiff: Uh, not too long ago, but maybe within the last two or three months.
Ms. Daigenault: Okay, did you submit a claim to Travelers?
Plaintiff: No. I didn't. I think I am still going to talk to you about that, but I didn't because of the deductible I thought, well, it is not that much, by the time CT Page 1180 you take care of the deductible, I didn't want to file a claim for maybe $120 or $50 or something.
(Olumide Dep. Vol. II, pp. 197-224; see Transcript of telephone conversation at Attachment D to Defendant's Memorandum in Support of Summary Judgment).
Based on the information available to her, Ms. Daigenault suspected that the plaintiff was making a fraudulent claim concerning the damage to his front bumper, and referred the matter for further investigation. Investigators for Travelers obtained the claims file from the plaintiff's previous insurance carrier, Allstate. This file contained a photograph of the plaintiff's vehicle, including the prior damage paid for by Allstate.
On November 4, 1991, Ms. Daigenault and James T. Cronin, an investigator from the Corporate Security Department of Travelers, met with the plaintiff. During this meeting, the plaintiff was asked to identify which damage on his vehicle was new, using photographs as reference points. Plaintiff identified, among other things, damage to his front bumper as new, and so indicated in a written statement and on photographs. (Olumide Dep. Vol. II, pp. 261-85; see first written statement at Attachment C to Defendant's Memorandum in Support of Summary Judgment). The plaintiff was then informed that he had identified old damage as new damage, and that Allstate had already paid for the old damage. (Olumide Dep. Vol. II, pp. 261-85). After being confronted with this information, the plaintiff signed a second written statement in which he admitted the damage to the bumper was old and had been paid for by Allstate, and that he had not been "entirely truthful" in his previous statement. (Olumide Dep. Vol II, pp. 261-85; see second written statement at Attachment B to Defendant's Memorandum in Support of Summary Judgment). The second statement, found at Attachment B of the defendant's supporting memorandum, reads:
 I Kunle M. Olumide DOB 7/20/58 of 142 Conestoga St., Windsor, Ct. made the following true voluntary statement.
 This is the second statement to Mr. Cronin. I was not entirely truthful in my previous statement. The damage to the front bumper was not new, it was CT Page 1181 done about a year ago and I was paid for this damage by Allstate Insurance and just never had it fixed.
 I have read this above statement, it has been read to me, it is the truth.
 [signed] Kunle Olumide
On November 4, 1991, the plaintiff's employment with Travelers was terminated for submitting a fraudulent insurance claim. When the plaintiff was terminated, George Eknaian, Louise O'Brien, and Julie Fernandez, supervisors of the plaintiff, were present.
Travelers has filed a Motion for Summary Judgment dated August 10, 1993, accompanied by a supporting memorandum and documentary evidence in support of the Motion. The plaintiff, in response, has filed a memorandum in opposition to the defendant's motion for summary judgment, dated August 25, 1993. In his memorandum in opposition, the plaintiff claimed that facts contained in the plaintiff's pre-trial memorandum, incorporated by reference in the plaintiff's affidavit, contradict the defendant's facts. This pretrial memorandum, dated August 11, 1993, was accompanied by a three-paragraph affidavit of the plaintiff merely stating that "the Summary of Facts contained in the attached pre-trial memorandum is true and accurate and said summary of facts is hereby incorporated in this affidavit as if fully set forth herein." (Plaintiff's Aff. 3). The plaintiff also includes, as exhibit E of his documentary evidence, his own signed statement declaring that he was not entirely truthful in his insurance claim and that the damage to the front bumper was not new.
DISCUSSION
The summary judgment procedure is designed "to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." Town Bank Trust Co. v. Benson, 176 Conn. 304,306-07, 407 A.2d 971 (1978). Summary judgment is a proper resolution to litigation where "`the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled CT Page 1182 to judgment as a matter of law.'" Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 316-17, 477 A.2d 1005 (1984), quoting Practice Book 384. The burden of proof is upon the moving party to show the nonexistence of any genuine issue of material fact. See Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334 (1991).
"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court." Bartha v. Waterbury House Wrecking Co., Inc., 190 Conn. 8, 12, 459 A.2d 115 (1983). Rather, the opponent "must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." Farrell v. Farrell, 182 Conn. 34, 39-40, 438 A.2d 415 (1980); see Burns v. Hartford Hospital, supra (holding plaintiff's counteraffidavit insufficient to raise issue of fact where plaintiff had made admissions to the contrary in her deposition).
Based on the undisputed documentary evidence produced by the defendant, including, especially, the plaintiff's signed statement admitting that he made a fraudulent insurance claim to the defendant, there are no genuine issues of material fact, and the defendant is entitled to judgment as a matter of law on all five counts of the plaintiff's revised complaint.
A. Count One — Wrongful Termination
The plaintiff claims in count one of his revised complaint that he was wrongfully discharged because Travelers knowingly and/or recklessly made false accusations of fraud against him and terminated his employment. Furthermore, the plaintiff asserts that he was wrongfully discharged, in that Travelers falsely accused him of fraud in retaliation for filing an insurance claim with it. Travelers argues that the wrongful discharge claim does not fall within the parameters of a wrongful discharge cause of action, and that in any event, the claim is utterly without substance based upon the undisputed material facts. CT Page 1183
In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,427 A.2d 385 (1980), our Supreme Court recognized a cause of action for wrongful discharge where "the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id., 475. The Court emphasized that "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Id., 477. Under this cause of action, the employee has the burden of pleading and proving that his dismissal occurred for a reason which violates public policy. Morris v. Hartford Courant Co., 200 Conn. 676, 679, 513 A.2d 66 (1986).
In this case, the undisputed facts of record show that the plaintiff's claim is without merit. Assuming, arguendo, that the termination of an employee based on a knowingly or recklessly false accusation would give rise to a proper cause of action under Sheets,[1] the plaintiff has nevertheless failed to offer factual documentation either to support such a claim or to contradict the defendant's evidence that his termination was justified. In fact, the plaintiff has produced, as his exhibit E, a copy of his own signed statement admitting that he "was not entirely truthful" in his previous statement, and that "[t]he damage to the front bumper was not new." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit E). Aside from his undocumented assertions, incorporated by reference from his pre-trial memorandum, the plaintiff has failed to produce any factual support which would indicate negligent, reckless or willful misconduct in the handling of the investigation of his insurance claim. Likewise, the plaintiff has failed to present any facts tending to show that any false accusation was made against him by Travelers, much less that any such false accusation was made knowingly or recklessly. Accordingly, summary judgment on count one must be granted.
Count Two — Intentional Infliction of Emotional Distress
The plaintiff claims in his second count that the defendant knew or should have known that its conduct would cause, and in fact did cause, emotional distress to the plaintiff. Travelers argues, inter alia, that the second count is legally insufficient because it does not fall within the tort of intentional infliction of emotional distress. CT Page 1184
To support a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Citations omitted.) Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986), quoting Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 62,480 A.2d 610 (1984, Cioffi, J.); see Restatement (Second) Torts 46 (1965). This tort is reserved for "`conduct exceeding all bounds usually tolerated by decent society, or a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" (Emphasis added.) Petyan v. Ellis, supra, 254 n. 5, quoting Prosser 
Keeton, Torts (5th ed.) 12, p. 60.
The plaintiff has not presented threshold evidence from which it can be inferred that the defendant's actions were extreme and outrageous. To the contrary, the undisputed facts establish that in view of the plaintiff's own duplicity, the defendant acted in an entirely justifiable manner both in investigating his fraudulent claim and in terminating him as a result thereof. Therefore, the defendant is entitled to summary judgment on this count as well.
Count Three — Unintentional Infliction of Emotional Distress
In the third count of his revised complaint, the plaintiff alleges that the defendant's conduct also constituted unintentional infliction of emotional distress. The defendant claims that the evidence in support of count three is legally insufficient since the undisputed facts indicate that the defendant conducted a reasonable and justifiable investigation of the plaintiff's claim, and thus, there is no evidence that the defendant's actions involved an unreasonable risk of causing emotional distress.
In order to support a claim of unintentional infliction of emotional distress, a plaintiff has the burden of establishing that the defendant knew or should have known that its actions would involve an unreasonable risk of causing distress that could precipitate illness or bodily harm. See Morris v. Hartford Courant Co., 200 Conn. 676, 683, CT Page 1185513 A.2d 66 (1986); Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978).
The plaintiff has presented no evidence from which it can be inferred that the defendant's actions involved an unreasonable risk of emotional distress which might lead to illness or bodily harm. Instead, to reiterate, the undisputed facts establish that the defendant conducted a reasonable and justifiable investigation of the plaintiff's claim in order to determine if it was fraudulent, which admittedly it was.
In Grieco v. The Hartford Courant Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 372593 (Jan. 27, 1993), a case directly on point, the court granted the employer's motion for summary judgment, declaring:
 In order to prove [an unintentional infliction of emotional distress] claim the plaintiff must show that the defendant knew or should have known that its actions would involve an unreasonable risk of causing distress that could precipitate illness or bodily harm. The plaintiff has presented no evidence from which it can be inferred that the defendant's actions involved an unreasonable risk of emotional distress which might lead to illness or bodily harm. The defendant has presented evidence that it conducted an investigation of the allegations of the plaintiff's theft prior to terminating the plaintiff's employment. . . . Undoubtedly, the plaintiff's termination was an unpleasant event for the plaintiff. However, there is no evidence that the defendant's actions involved an unreasonable risk of causing emotional distress which could lead to bodily harm or injury. . . . Defendant's conduct was a reasonable response to theft in its workplace and was well within the bounds of acceptable behavior. `The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability.'
(Citations omitted.) Id. For the reasons set forth above, summary judgment is also granted on count three of the plaintiff's revised complaint. CT Page 1186
Count Four — Defamation
In the fourth count of the revised complaint, the plaintiff alleges that Travelers falsely accused him of fraud "in the hearing of diverse persons," and that said accusation was false. Travelers argues that the plaintiff's factual allegations and legal conclusions fail to support a cause of action for defamation.
Defamation is defined as, "[a]n intentional communication, either published or publicly spoken, that injures another's reputation or good name; the unprivileged publication of false statements which naturally and proximately result in injury to another." Black's Law Dictionary 417 (6th ed. 1990). To be defamatory, the alleged statement must be false. See Restatement (Second) of Torts 581A (1977).
The plaintiff has failed to produce any evidence tending to show the statements attributed to Traveler's employees were untrue. To the contrary, the plaintiff has submitted a copy of his signed statement in which he acknowledges that he was not entirely truthful in his insurance claim to Travelers.
In addition, as a general rule, a communication derogatory of the character or attributes of an employee is qualifiedly privileged if made between persons having a common business duty or interest therein as long as it is made in good faith without malice. See generally 53 C.J.S. Libel and Slander 77-79 (1987). In Terry v. Tubbell, 22 Conn. Sup. 248,167 A.2d 919 (Super.Ct. 1960), the court held that a payroll voucher form which mistakenly stated the plaintiff was "discharged for cause" did not constitute defamation since the corporate record was intended solely for internal corporate use and did not pass beyond immediate corporate officers and employees involved in adjusting payroll records. Id., 256. The court declared that the elements of this qualified privilege are "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner to proper parties." Id.
Other jurisdictions have similarly recognized a qualified privilege in such circumstances. In DiBiasio v. Sharpe, CT Page 1187525 A.2d 489 (R.I. 1987), the Supreme Court of Rhode Island, in reversing the trial court, held that information concerning the reasons for terminating an employee communicated between a personnel administrator, an employee's immediate supervisor, and a department manager fall within the scope of the qualified privilege for purposes of a defamation action. Id., 491. In Pappas v. Air France, 652 F. Sup. 198 (E.D.N Y 1986), a federal district court, applying New York law, held that alleged defamatory statements made by an employer's service manager in his office in the presence of the employee and employer's security officer were a matter of common business concern, and thus, qualifiedly privileged. Id., 202-03.
The plaintiff has presented no evidence that the privilege was abused. Instead, the undisputed facts demonstrate that in concluding the plaintiff submitted a fraudulent insurance claim, Travelers relied upon a written admission by the plaintiff, a contradictory statement made over the telephone to Ms. Daigenault, information provided by the plaintiff's former insurer, Allstate, and photographic evidence. Aside from his present denials, the plaintiff has offered no evidence that he was falsely accused of insurance fraud, or that Travelers acted with malice in its accusations against him. Accordingly, summary judgment is hereby granted on the plaintiff's defamation count.
Count Five — Breach of Contract
In the fifth count of his revised complaint, the plaintiff alleges that Travelers is in breach of its automobile insurance contract with him, because it has not paid him the full amount he claimed as losses incurred through damage to his vehicle. Travelers argues that based on the unambiguous terms of the plaintiff's automobile insurance policy with it, it had no legal duty to pay him anything.
In Connecticut, the principles of contract construction govern the interpretation of insurance policies. Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 702, 569 A.2d 1131
(1990).
 If . . . the words in the policy `are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the CT Page 1188 intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.'
Id., 702-03, quoting Plainville v. Travelers Indemnity Co.,178 Conn. 664, 675, 425 A.2d 131 (1979).
Page twenty-two of the plaintiff's automobile policy with the defendant provides:
 We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.
This provision clearly states the limits of the Traveler's obligations to provide insurance coverage to the plaintiff. Because the uncontradicted evidence clearly shows that the plaintiff engaged in fraudulent conduct in connection with the claim for which coverage is now sought, Travelers has no contractual obligation to compensate him for that loss. For this reason, summary judgment must also be granted on the fifth count of the plaintiff's revised complaint.
CONCLUSION
For the reasons set forth above, summary judgment is granted for the defendant on all counts of the plaintiff's revised complaint.
Sheldon, J.