THOMPSON, K., JUDGE:
David A. Estepp, Jr. filed suit against the Johnson County Newspapers, Inc., *742 d/b/a The Paintsville Herald (the Herald), arguing he was defamed and the Herald engaged in outrageous conduct when it used the terms "removed from" and "relieved of" in news articles referring to him leaving his employment. Estepp appeals from the judgment of the Johnson Circuit Court granting the newspaper's motion for summary judgment and dismissing the case. As the newspaper did not defame Estepp or engage in outrageous conduct, we affirm.
Estepp was employed as President/General Manager of Big Sandy RECC (Big Sandy), an electric cooperative. While Estepp was serving in this position, in January 2017, local resident George Spriggs began to campaign for a seat on Big Sandy's Board of Directors. While doing so, according to Estepp, Spriggs began to circulate a document accusing Estepp of taking bribes and kickbacks, illegally using FEMA funds, and improperly using Big Sandy's facilities and personnel. On February 27, 2017, Estepp sued Spriggs for defamation. The Herald reported on this lawsuit.
Meanwhile, members of the labor union that represented many of Big Sandy's employees were frustrated with their prior collective bargaining negotiations. In March 2017, some of the membership organized a petition calling for the termination of Big Sandy executives including Estepp and placed the petition in a local grocery store.
On April 10, 2017, Estepp went to the grocery store and removed the petition. Estepp argues he did so under the belief that the petition contained defamatory statements about him.
On April 12, 2017, the Herald reported that the petition had been taken from the grocery store and the incident was recorded on the store's surveillance video. Other news outlets also published information about the petition's removal, including video footage which showed Estepp removing the petition and stuffing it into his back pocket.
On April 14, 2017, the Herald reported that the petition was returned, and the Kentucky State Police had begun an investigation.
Subsequently, Estepp left his position as President/General Manager of Big Sandy. On May 12, 2017, the Herald published a news report with the headline: "Big Sandy RECC replaces general manager." The article began:
Big Sandy Rural Electric Cooperative Company (RECC) has replaced David Estepp with Bobby Sexton as general manager of the company.
Estepp was removed from his position on April 27, as confirmed by William Maxey, board member for Big Sandy RECC[.]
"Bobby Sexton has been hired to serve as interim general manager of Big Sandy RECC." said Lance Daniels, RECC Board Attorney. "David Estepp is no longer general manager."
The article had a paragraph discussing Sexton's background and a paragraph discussing Big Sandy's history and importance. It recounted:
A petition making allegations of misuse of RECC resources and calling for the removal of Estepp was stolen from where it was posted at Wildcat Grocery in Oil Springs on April 12. Sheriff Dwayne Price identified Estepp as the person in the surveillance video of the incident and indicated that Estepp had approached him to return the petition.
As of presstime, no charges have been filed and Daniels would not comment as to the nature of Estepp's departure from the company.
*743 On June 6, 2017, Estepp was criminally charged with the theft of the petition. On June 9, 2017, the Herald published a new report about the charge entitled, "Estepp charged with theft of stolen petition." The article explained the charge, then stated as background "Estepp was relieved of his position at Big Sandy RECC as of April 27." The article recounted the contents of the petition and how Estepp was identified as the person who stole the petition, before discussing the Johnson County Attorney's recusal from the case.
Estepp filed a complaint against the Herald.[1] In his complaint he states that "[o]n April 27, 2017 Estepp, pursuant to the written terms of his contract with [Big Sandy] exercised an option to be excused from further performance of his contractual duties. This request was honored by the [Big Sandy] board of directors during its April 2017 meeting."
In his complaint, Estepp quoted several paragraphs from a Mutual Confidential Severance Agreement and General Release (severance agreement) that he and Big Sandy representatives signed. Estepp explained in his complaint that the severance agreement required both parties to keep the terms of the agreement confidential but quoted in full, from a paragraph entitled "Permissible Responses":
In the event Employee or Company receives inquiries about the status or result of the dispute with the Company and Employee or the fact and the terms of this agreement from any person or entity ... Employee and Company agree to limit their response to ... the following statement: "That David Estepp had voluntarily resigned and the matter is over." The Company shall be permitted to state in general terms that Employee is no longer serving as the general manager of the Company. In the event that they receive any inquiry ... Employee and Company agree to limit their response to, in effect ... the following statement: "I am not allowed to talk about the way the matter ended other than Mr. Estepp voluntarily resigned."
(Emphasis in the original).
Estepp's factual allegations against the Herald regarding the May 12, 2017 article are as follows:
The contact by [the] Herald with William Maxey [as provided in the article that Maxey confirmed Estepp was removed] was in direct violation of a cautionary warning given to the Herald by Lance Daniels, RECC's board attorney ... [that] no one from [Big Sandy], other than himself was authorized to disclose any information concerning Estepp's departure from [Big Sandy]. Not only did the article improperly characterize Estepp as being "removed" from his position but implied there was a causal relationship between his removal and the "stolen" petition.
Estepp's factual allegation regarding the June 9, 2017 article is that it "improperly characterized that he had been 'relieved of his position at Big Sandy RECC as of April 27.' " Estepp requested a retraction for both articles.
Estepp alleged he was defamed by the statements that he was "removed" from his position and that he "was relieved of his position" with both articles implying "there was a causal relationship between Estepp being removed and/or relieved of his position at [Big Sandy] and the incident involving the petition at Wildcat Grocery"
*744 thereby damaging his reputation and good name. Estepp alleged the Herald's conduct was outrageous because it acted "in disobedience of instructions given to it by [Big Sandy]'s counsel and performed with the knowledge of its substantial influence it has in shaping the views of its readers."
The Herald immediately filed a motion to dismiss or for summary judgment arguing the statements were either true or substantially true, defamation was not available for an "implication" that Estepp's removal was causally related to the theft of the petition, the statements were not defamatory, Estepp was a limited purpose public figure who could not prove actual malice, and Estepp could not establish any element of outrageous conduct.
The circuit court granted the motion for summary judgment and dismissed the case on the basis that: (1) the statements the newspaper made about Estepp were substantially truthful; (2) the language "relieved of" or "removed from" is not defamatory; and (3) the newspaper's act did not constitute outrageous conduct or intentional infliction of emotional distress because, other than the intentional act of printing the articles, the factors that needed to be shown were absent. We agree and affirm.
"The requisite elements for a defamation claim are: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' " Toler v. Süd-Chemie, Inc. , 458 S.W.3d 276, 281-82 (Ky. 2014) (quoting the Restatement (Second) of Torts § 558 (1977) ) (footnotes omitted).
It is well established that there are certain categories of statements that qualify as per se defamation, where there is a "a conclusive presumption of both malice and damage" and, thus, "injury to reputation is presumed[.]" Id. at 282 (internal footnote citations omitted). "[F]alse allegations of unfitness to perform a job" are per se defamatory. Id.
The truth is a complete defense and "[w]here the defendant is a newspaper, the rule is that it is not to be held to the exact facts or to the most minute details of the transactions that it reports. What the law requires is that the publication be substantially true." Bell v. Courier-Journal & Louisville Times Co. , 402 S.W.2d 84, 87 (Ky. 1966). We must consider "the [articles] in their entirety when determining whether the statements and inferences within [them] are false and defamatory." Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc. , 179 S.W.3d 785, 791 (Ky. 2005). However, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified." ' Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517, 111 S.Ct. 2419, 2433, 115 L.Ed.2d 447 (1991) (quoting Heuer v. Kee , 15 Cal.App. 2d 710, 714, 59 P.2d 1063, 1064 (1936) ). See National College of Kentucky, Inc. v. WAVE Holdings, LLC , 536 S.W.3d 218, 223-24 (Ky. App. 2017) (for examples of statements which are at least substantially true).
We agree with our sister jurisdictions that a mere statement of discharge from employment, whether it be termed "terminated" "removed" "discharged for cause" or "fired" even if untrue, is not per se defamatory as compared to stating that an employee made a voluntary decision to leave; these are distinctions without a difference. See *745 Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc. , 804 F.3d 59, 74 (1st Cir. 2015) (noting there may be a difference in saying an employee was "removed" for performance reasons rather than left following a "directive" to retake power or give it up forever, "[b]ut even assuming any difference suggests falsity, plaintiffs identify nothing in the summary-judgment record showing their reputations would be changed for the better by a more fulsome account of [the employee's] leaving."); Fairbanks Pub. Co. v. Pitka , 376 P.2d 190, 195 (Alaska 1962) (holding a statement that someone is fired "is not defamatory as a matter of law. The right to hire implies the right to fire, and therefore a statement that the latter right has been exercised by one's employer does not necessarily have a tendency to injure or discredit the employee who has been discharged."); Becker v. Toulmin , 165 Ohio St. 549, 555, 138 N.E.2d 391, 396 (1956) (" 'Terminate' is not a word bringing any person into ridicule, hatred or contempt or affecting him injuriously in his trade or profession. 'Terminate' means an ending and can be, and frequently is, accomplished by mutual consent." Here the plaintiff's resignation and the defendant's acceptance of it.); Nichols v. Item Publishers , 309 N.Y. 596, 601, 132 N.E.2d 860, 862 (1956) ("The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity."); Einhorn v. LaChance , 823 S.W.2d 405, 411 (Tex. App. 1992) (holding statement that plaintiff was "fired for reasons relating 'solely to work performance' " was not defamatory as a matter of law because it was a nonspecific statement); Terry v. Hubbell , 22 Conn. Supp. 248, 256, 167 A.2d 919, 923 (Super. Ct. 1960) ("Taken in their 'natural and ordinary meaning,' the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance ... the marking of the box 'discharged for cause' did not constitute a libel per se."); Lian v. Sedgwick James of New York, Inc. , 992 F. Supp. 644, 649 (S.D.N.Y. 1998) ("The mere statement of discharge or termination from employment, even if untrue, does not constitute libel."); Klein v. Victor , 903 F. Supp. 1327, 1336 (E.D. Mo. 1995) (holding false statement of termination not defamatory because it "does not necessarily impute a want of knowledge, skill, capacity or fitness to perform, nor does it impute fraud, want of integrity or misconduct.").
As explained in Nichols , 309 N.Y. at 601, 132 N.E.2d at 862, "[i]t is only when the publication [relating the fact of one's removal from employment] contains an insinuation that the dismissal was for some misconduct that it becomes defamatory." This reasoning explains why defamation has been found in our Kentucky cases in which a statement of discharge was combined with an imputation of unfitness.
In Louisville Taxicab & Transfer Co. v. Ingle , 229 Ky. 578, 17 S.W.2d 709, 710 (1929), "[t]he words written on the blackboard, 'Ingle discharged for drinking,' in their ordinary acceptance mean that he was unfit for his occupation by reason of his indulgence in drinking." The Court clarified that publication of those words was libelous per se because "they impute unfitness to perform the duties of an office or employment, or ... prejudice a person in his profession or trade" by "not only stat[ing] the fact of plaintiff's discharge, but the reason for it." Similarly, in McCauley v. Elrod , 16 Ky.L.Rptr. 291, 27 S.W. 867, 868 (Ky. 1894), the Court held that the statement "I discharged Elrod for stealing," was actionable.
The gist and sting in each article here, as was also the case in Picard v. Brennan , 307 A.2d 833, 836 (Me. 1973), "lies in the reason charged for dismissal and not in the *746 mere fact of discharge." The Court in Picard built upon this logic to determine that if "the defendant is able to demonstrate the truth of that portion of the statement which alone makes it defamatory, he should be deemed to have supplied an adequate defense to the statement taken as a whole." Id. Thus, in that case, where the plaintiff was not actually dismissed from his former employment, but the reason given for the dismissal was true (that he was careless in the weighing of meats), the report containing both statements was not actionable for defamation. Id.
This is very similar to the situation before us. Regardless of whether Estepp chose to resign or was terminated, that is not actionable because even reporting inaccurately that someone was fired is not defamatory per se as it does not impute unfitness for a particular profession. The only sting would be if Estepp was terminated due to stealing the petition. However, Estepp does not argue that it was untrue that he stole the petition. Therefore, because the charge against him which could cause the harm to him was not false, it cannot be defamatory.
While Estepp did what he could to control the narrative about why he left his employment through his agreement with Big Sandy, which limited what representatives of Big Sandy could say about the circumstances of his leaving, Estepp could not control how other people would conceive of the situation or how it would be reported. The Herald certainly was not bound by Estepp's agreement with Big Sandy and could report upon events that Estepp would prefer to remain hidden so long as its reporting was substantially truthful. By preventing Big Sandy representatives from commenting on why Estepp resigned, the implication that he may have been forced to resign could neither be confirmed nor denied.
Having reviewed the statements that Estepp finds objectionable, it is evident that it was substantially truthful that Estepp was "removed" and "relieved" of his position. Any damage to Estepp's reputation would have been caused by his own actions (getting caught on video removing the petition) and immediately thereafter resigning, rather than reporting on what transpired. Any implication would remain basically the same whether or not the Herald used Estepp's preferred characterization for how he came to leave his employment.
Estepp's final argument is that the circuit court erred in granting summary judgment on his claim of intentional infliction of emotional distress or outrageous conduct. Estepp's claim is that the Herald acted outrageously by disobeying the instructions given to it by Big Sandy's counsel "[that] no one from [Big Sandy], other than himself was authorized to disclose any information concerning Estepp's departure from [Big Sandy]." This is apparently a reference to the fact that in one article it was stated that a board member confirmed that Estepp was removed from his position.
In Kentucky, the elements of proof needed to establish the tort of intentional infliction of emotional distress or outrageous conduct are as follows:
1) the wrongdoer's conduct must be intentional or reckless;
2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
4) the emotional distress must be severe.
*747 Humana of Kentucky, Inc. v. Seitz , 796 S.W.2d 1, 2-3 (Ky. 1990).
[T]he tort is not available for petty insults, unkind words and minor indignities. Nor is it to compensate for behavior that is cold, callous and lacking sensitivity. Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees.
Osborne v. Payne , 31 S.W.3d 911, 914 (Ky. 2000) (internal quotation marks and citations omitted).
The circuit court did not err in granting summary judgment on this issue as other than acting intentionally, the Herald's actions cannot satisfy the required elements for this tort. Pet horses being sold for slaughter is outrageous conduct. Burgess v. Taylor , 44 S.W.3d 806, 811-12 (Ky. App. 2001). A newspaper choosing to interview another Big Sandy representative about the manner of Estepp's departure after a public controversy about his behavior, rather than limiting its investigation to what legal counsel told it, and then choosing to report on what its investigation revealed is not outrageous conduct.
As discussed earlier, while Estepp may have wished to control the Herald's actions, any agreement he made with Big Sandy as to the narrative of what would be disclosed by its representatives could not similarly bind the Herald as a non-party to such an agreement. It is not outrageous or intolerable for a newspaper to investigate and report based upon what it uncovers. In acting as newspapers typically do, the Herald was not offending generally accepted standards of decency and morality. Any distress Estepp suffered was based on the natural consequences his own actions that followed the theft of the petition and it becoming well known that he took it and left Big Sandy shortly thereafter, not the particular manner in which the Herald reported on the theft and Estepp's leaving his employment. The Herald acted quite judiciously in the way it reported on these matters.
Accordingly, we affirm the order of the Johnson Circuit Court which granted the Herald's motion for summary judgment and dismissed the case against it.
ALL CONCUR.

Estepp originally also filed claims against Big Sandy but later voluntarily dismissed his action against his former employer without prejudice. Therefore, we do not recount the claims he made against Big Sandy.