RENDERED: JUNE 3, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0290-MR

GARY SANDERS                                          APPELLANT

                   APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE BRIAN C. EDWARDS, JUDGE
                       ACTION NO. 18-CI-003214

BOARD OF EDUCATION OF
JEFFERSON COUNTY; DR. MARTIN
POLLIO; JASON NEUSS; AND
KRISHA BYRON                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Gary Sanders appeals the Jefferson Circuit Court's February 23, 2021, order granting summary judgment in favor of appellees Board of Education of Jefferson County (Board or JCBE), Dr. Martin Pollio, Jason Neuss, and Krisha Byron. The circuit court found that Sanders failed to present sufficient evidence to support his claims of defamation and discrimination. We affirm.

The circuit court succinctly summarized the facts and procedural history of this case, and we repeat its findings here:

> Mr. Sanders began working for JCPS [Jefferson County Public Schools] in 2002, initially being assigned to several different schools as an itinerant teacher, including one stint as a teacher at Stopher Elementary under the principalship of Principal Brigette Owens. While at Stopher Elementary, Mr. Sanders was reprimanded for using the "N word" in a conversation with Principal Owens (who is African-American). Mr. Sanders accepted an assignment as a Physical Education Teacher at Ballard High School for the 2017-18 academic year. During his time at Ballard, students made numerous complaints against Mr. Sanders alleging that he directed inappropriate comments towards them and other students. These complaints were reported to Assistant Principal Tonkeyta Rodgers. Ms. Rodgers then advised Principal Jason Neuss of these allegations and two conferences were then convened with Mr. Sanders to address the allegations.
>
> Principal Neuss forwarded a report detailing the students['] allegations to the Jefferson County Board of Education's Office of Compliance and Investigations. Investigator Krisha Byron was assigned to investigate the matter. Following her investigation, Ms. Byron memorialized her findings in a *Confidential Compliance and Investigations Report* and in that report, she substantiated the students' allegations that Mr. Sanders had made several inappropriate statements to students.
>
> The report was then disseminated to O'Dell Henderson who served as the Director of Employee Relations for the Jefferson County Board of Education and to Principal Neuss. Upon review of the report, Principal Neuss, recommended to Superintendent for Jefferson County Public Schools Dr. Martin Pol[l]io that Mr. [Sanders]'s employment be terminated. Dr. Pol[l]io

-2-

accepted this recommendation and Mr. [Sanders] was then terminated.

On May 29, 2018, Mr. Sanders filed a formal grievance appealing his termination. Following a lengthy arbitration process, including a three-day hearing, the Arbitrator upheld the decision to terminate Mr. [Sanders], concluding in a 41 page report, that the termination was supported by just cause. Mr. Sanders subsequently filed a lawsuit naming as Defendants the JCBE, Dr. Pol[l]io, Mr. Neuss and Ms. Byron. The lawsuit alleges that Mr. Sanders was defamed and that he was terminated because he is Caucasian, male, and over the age of 40. The Defendants are asking that this Court dismiss all of Mr. Sanders' claims and enter judgment in their favor.

The circuit court granted summary judgment in favor of the appellees, and Sanders appeals.

We begin by stating the applicable standard of review, namely:

"The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012). When reviewing a summary judgment order, only legal questions and the existence, or non-existence, of material facts are considered. *Stathers v. Garrard County Bd. of Educ.*, 405 S.W.3d 473, 478 (Ky. App. 2012). Our review is *de novo*. *Id.*

Before the circuit court, "[t]he moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present" evidence establishing a triable issue of material fact. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). That is, "[t]he party opposing a properly presented summary

> judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001).

*Fortney v. Guzman*, 482 S.W.3d 784, 788-89 (Ky. App. 2015).

Furthermore, "[t]he requisite elements for a defamation claim are: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014) (quoting the RESTATEMENT (SECOND) OF TORTS § 558 (1977)) (footnotes omitted). "It is well established that there are certain categories of statements that qualify as *per se* defamation, where there is [] 'a conclusive presumption of both malice and damage' and, thus, 'injury to reputation is presumed[.]' '[F]alse allegations of unfitness to perform a job' are *per se* defamatory." *Estepp v. Johnson County Newspapers, Inc.*, 578 S.W.3d 740, 744 (Ky. App. 2019) (citing to *Toler*, 458 S.W.3d at 282). However, "[t]he truth is a complete defense[.]" *Id.*

Sanders first argues that the dismissal was in error because he had sufficiently demonstrated a *prima facie* case of defamation. He insists that his denial of the bulk of the allegations made against him was sufficient proof of the

falsity of the claims contained in the appellees' reports and internal communications. Sanders urges that some of his students testified to the falsity of certain allegations, thus making the issue of defamation a factual issue for jury determination.

Also, regarding the issue of defamation, Sanders maintains that he "introduced abundant evidence that appellees abused their qualified privilege" because they made only minimal efforts to ascertain the accuracy of their reports, citing *Warford v. Lexington Herald-Leader*, 789 S.W.2d 758 (Ky. 1990). And he contends that he demonstrated sufficient bad faith to overcome the appellees' assertion of qualified immunity, citing *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).

We disagree. "[M]erely alleging falsity is not enough to defeat a directed-verdict motion based on the qualified privilege." *Toler*, 458 S.W.3d at 286. Nor is an unsupported allegation of bad faith. The circuit court's analysis is sound on this issue:

> In his response to the Defendants' Motion for Summary Judgment, Mr. Sanders "concedes that the reports and documents at issue in this case were generally protected by the qualified privilege." Accordingly, under the law of defamation, Mr. Sanders must establish that this privilege was abused by the defendants. *Fortney v. Guzman*, 482 S.W.3d 784 (Ky. App. 2015).
>
> Individuals who proffer communications that are protected by qualified privilege are immune from liability as long as the "communications [are] made in good faith, without actual malice, with reasonable or probable

-5-

grounds for believing them to be true, on a subject matter in which the author of the communication has an interest, or in respect to which he has a duty, public, personal, or private, either legal, judicial, political, moral or social, made to a person having a corresponding interest or duty." *Tucker v. Kilgore*, 388 S.W.2d 112, 114 (Ky. Ct. App. 1964) (citations omitted). One condition is that the privilege "must be exercised in a reasonable manner and for a proper purpose. The immunity is forfeited if the defendant steps outside of the scope of the privilege or abuses the occasion." *Id*. (citations omitted). Where a publication is made under circumstances involving qualified privilege, "the burden is on the plaintiff to prove actual malice." *Weinstein v. Rhorer*, 42 S.W.2d 892, 893 (Ky. Ct. App. 1931) (citations omitted).

The record in this matter reflects that it was in fact Ms. Byron's job and duty to report to Mr. Neuss and the other named defendants the findings of her investigation. That is what investigators are hired to do. Furthermore, it was reasonable of Mr. Neuss and the other named Defendants in this action to share the findings of investigations that they were involved in with other individuals, including Dr. Wayne Lewis.

Plaintiff must present affirmative evidence of both actual malice and falsity in order to show that the Defendants acted outside of their qualified privilege. *Fortney v. Guzman*, 482 S.W.3d 784 (Ky. App. 2015). Plaintiff's claim must fail because he merely proffers sweeping allegations rooted in suspicion and conjecture to support his contention that the defendants acted maliciously and without good faith when deciding to publish the reports at issue and he provides no affirmative evidence to support this contention. *Id.* at 791. As stated above, it [sic] his burden to do so and he has failed to satisfy his burden.

-6-

We cannot improve on this reasoning. Thus, we affirm the circuit court's decision to dismiss the allegation of defamation.

The remaining arguments pertain to the issues of race and sex discrimination. Sanders states that the appellees' accusation of his racism is "inferential evidence of racial motivation on the part of the accuser." Because he was labeled "an extreme racist," he continues, the appellees stereotyped him as a Caucasian male (which also bolstered, he argues, his claim for sex discrimination). Again, we agree with the circuit court's analysis and repeat it here:

> Mr. Sanders' lawsuit states that he is a Caucasian male and that at the time of his termination, he was over the age of 40. He alleges that because of his race, gender, and age, the defendants terminated him which is a violation of KRS [Kentucky Revised Statute] 344.040(1)[.]
>
> KRS [Chapter] 344 is commonly referred to as the *Kentucky Civil Rights Act* and for the purposes of Plaintiff's claims here, the relevant portion states:
>
>> It is an unlawful practice for an employer:
>> (a) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over. . . . KRS 344.040(1)[.]
>
> The *Kentucky Civil Rights Act* was enacted in 1966. In 1966, comments such as those attributed to Mr. Sanders by Principal Owens as well as a number of the students

who[m] he was charged with educating were commonplace in American society. In 1966, similar comments were directed to a young African American student named James Meredith moments before he was shot for having the temerity to attempt to enroll in the University of Mississippi, the flagship University of James Kimble Vardaman's home state.

In 1966, as a means of addressing the racist philosophies of people such as James Kimble Vardaman[,] the Commonwealth of Kentucky enacted KRS [Chapter] 344 – *The Kentucky Civil Rights Act*. In his response to the Defendants['] Motion for Summary Judgment, Mr. Sanders essentially argues that he is not an "extreme racist" like Mr. Vard[a]man but that instead, he is merely a white man who finds no problem using the "N word" when addressing his African-American principal or his multiracial classroom of students. Despite the bizarreness of this argument, this Court will not allow itself to be distracted with determining whether Mr. Sanders is a racist and instead will focus on the question of whether he has established a prima facie showing that he was discriminated against by the defendants. This Court must conclude that he has not.

In order to establish a prima facie showing of discrimination under KRS [Chapter] 344, a plaintiff must establish that l) he is a member of a protected class, 2) that he suffered an adverse employment action, 3) that he was otherwise qualified for the position, and 4) that the position was filled by a person outside of the protected class that he is a member of. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, [93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)], *Commonwealth v. Solly*, 253 S.W.3d 537 [(Ky. 2008)]. Mr. Sanders has established elements 1 and 2 by demonstrating that he is a member of a protected class and that he did sustain an adverse employment action (his termination). However, he has failed to establish that he was qualified to maintain his position and that he was replaced by someone outside of

his protected class. The law allows a plaintiff to establish these elements by identifying similarly situated individuals outside of his protected class who were treated more favorably[,] but Mr. Sanders has failed to present any evidence of this being the case here. Accordingly, Mr. Sanders has failed to establish a prima facie showing of discrimination by the Defendants.

In his response to Defendants' Motion for Summary Judgment, Mr. Sanders also argues that he was subjected to reverse race and sex discrimination. As stated above, KRS [Chapter] 344 was not originally intended to provide for relief for alleged discriminatory conduct against Caucasian males, but Courts have since allowed for such relief upon demonstration that a Defendant is "that unusual employer who discriminates against the majority[.]" *Sutherland v. Mich. Dept. of Treasury*, [344] F.3d 603 (6th Cir. 2003). Mr. Sanders in discovery responses and in his response to the Defendant[s'] Motion for Summary Judgment, once again makes sweeping, speculative accusations against the Defendants with references to the "current culture at JCPS"[;] however he provides not a shred of affirmative evidence to support his conjecture-based opinions. Accordingly, Mr. Sanders has failed to demonstrate that JCBE is "that unusual employer who discriminates against the majority" which he must demonstrate to prevail on a KRS [Chapter] 344 reverse discrimination claim. *Jefferson County v. Zaring*, 91 S.W.3d 583, 591 (Ky. 2002)[.]

In finding that Mr. Sanders has failed to establish a prima fac[i]e case of discrimination under KRS [Chapter] 344, the Court need not address the question of whether JCBE had legitimate non-discriminatory reasons for terminating him. Nonetheless, were the Court to conclude that a prima facie case had been established, it would also conclude that there were legitimate non-discriminatory reasons for terminating Mr. Sanders, as

was concluded in the 41-page Arbitration opinion that upheld his termination.

(Emphasis omitted.)

The remaining arguments (namely, those pertaining to the appellees' pre-hearing statement and the effect of the arbitrator's report) are without merit, and we decline to discuss them in this Opinion.

The JCBE's internal communications about Sanders's conduct were privileged, made for the purposes of evaluating the allegations against him, and considered the appropriate discipline. Sanders failed in his burden of proving the privilege was abused. The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Philip C. Kimball
Louisville, Kentucky

BRIEF FOR APPELLEE:

C. Tyson Gorman
Jordan M. White
Louisville, Kentucky